# FILED

OCT 28 2013

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

ORDERED PUBLISHED

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | | |
|---|---|---|
| In re: | ) | BAP No.   CC-12-1567-KuKiTa |
| | ) | |
| GASPROM, INC., | ) | Bk. No.   ND 12-10772-RR |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| GASPROM, INC., | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | **OPINION** |
| | ) | |
| MICHELLE FATEH; FRED FATEH; | ) | |
| SANDRA MCBETH, Chapter 7 | ) | |
| Trustee; PARKER FORECLOSURE | ) | |
| SERVICES; COLONIAL PACIFIC | ) | |
| LEASING CORP.; JULIAN BACH; | ) | |
| GREEN ENERGY HOLDINGS, LLC; | ) | |
| UNITED STATES TRUSTEE, | ) | |
| | ) | |
| Appellees.[1] | ) | |
| _____ | ) | |

Argued and Submitted on September 19, 2013
at Pasadena, California

Filed – October 28, 2013

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Robin L. Riblet, Bankruptcy Judge, Presiding

_____

Appearances:   Michael R. Sment argued for appellant Gasprom, Inc.; Peter A. Goldenring of Goldenring & Prosser argued for appellee Michelle Fateh.

_____

Before:  KURTZ, KIRSCHER and TAYLOR, Bankruptcy Judges.

_____

   [1] While Gasprom's Notice of Appeal named all of the above-referenced appellees as parties to the order on appeal, the only named appellee who has participated in this appeal is Michelle Fateh.

KURTZ, Bankruptcy Judge:

**INTRODUCTION**

Chapter 7[2] debtor Gasprom, Inc. ("Gasprom") appeals from a bankruptcy court order holding that the postpetition foreclosure of Gasprom's principal asset, a gas station, did not violate the automatic stay because the stay had terminated by operation of law as a result of the chapter 7 trustee's abandonment of the gas station. The bankruptcy court based this holding on an incorrect legal analysis regarding the effect of the abandonment on the automatic stay.

In the same order, the bankruptcy court held in the alternative that it would annul the stay in order to retroactively validate the foreclosure sale and the actions of the parties who conducted the foreclosure sale. But the bankruptcy court abused its discretion in annulling the stay. The court did not apply the appropriate legal standard for determining whether the stay should be annulled. Nor did the court give the parties any opportunity to develop the record regarding the equities of their respective positions. Consequently, we VACATE AND REMAND for further proceedings.

**FACTS**

Gasprom commenced its chapter 11 bankruptcy case in February 2012. Within roughly a month, the bankruptcy court converted Gasprom's case to chapter 7, and Sandra McBeth was appointed to

---

[2]  Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.

2

serve as chapter 7 trustee ("Trustee").

Gasprom's only asset of significance was a non-operational gas station in Oxnard, California ("Gas Station"). In June 2012, the Trustee filed a notice of intention to abandon the Gas Station. Gasprom filed a two-page objection to the proposed abandonment, stating that the Trustee should not be permitted to abandon the Gas Station because it had "significant equity potential." Gasprom further asserted that the Gas Station suffered from hazardous waste contamination and that state law prohibited the Trustee from abandoning contaminated property. Gasprom offered no evidence or legal authority to support its assertions.

The Trustee then submitted evidence in support of her intention to abandon the Gas Station and noticed her proposed abandonment for hearing. According to the Trustee's evidence, she did not have any funds available to render the Gas Station operational. Nor did she have any funds available to address a number of troublesome issues concerning permitting, hazardous waste contamination and underground storage tank compliance. As the Trustee explained, the Gas Station's value was significantly impaired by these issues and by its nonoperational status, and the Gas Station also was fully encumbered.

On July 27, 2012, a few days before the hearing on the proposed abandonment, Michelle Fateh ("Fateh") filed a memorandum and a declaration in support of the Trustee's proposed abandonment. Fateh asserted that she was the holder of a first deed of trust ("Deed Of Trust") against the Gas Station, that the obligation secured by the Deed Of Trust exceeded $1 million and

3

that Gasprom's opposition to the proposed abandonment was meritless. More importantly for our purposes, Fateh asserted that, if the court authorized the Trustee to abandon the Gas Station, the abandonment effectively would terminate the § 362 automatic stay as to the Gas Station and thereby would enable Fateh to proceed with her pending foreclosure sale against the Gas Station.[3]

The bankruptcy court held the hearing on the proposed abandonment on August 1, 2012 ("Abandonment Hearing").[4] At the hearing, Gasprom asserted that the court should continue the Abandonment Hearing to "prevent any rash or sudden actions" by the creditors asserting liens against the Gas Station. Hr'g Tr. (Aug. 1, 2012) at 6:15-8:13. The bankruptcy court rejected Gasprom's argument for a continuance. As the court put it, Gasprom only sought to prevent the Trustee from abandoning the Gas Station so that the automatic stay would continue to enjoin other parties claiming an interest in the Gas Station from pursuing their rights in state court. The court further opined

---

[3] Fateh originally noticed her foreclosure sale for February 24, 2012, the day Gasprom filed its chapter 11 bankruptcy case. In light of the bankruptcy filing and the automatic stay, Fateh apparently continued the foreclosure sale.

[4] The transcript of the Abandonment Hearing that Gasprom attached to its excerpts of record does not appear to be an official transcript. Nonetheless, because both sides have relied on this unofficial transcript in proceedings held in the bankruptcy court and on appeal, we will accept the transcript as providing a generally accurate account of the Abandonment Hearing and the bankruptcy court's key comments and rulings. See First St. Holdings NV, LLC v. MS Mission Holdings, LLC (In re First St. Holdings NV, LLC), 2012 WL 6050459, at *7 n.12 (mem. dec. 9th Cir. BAP 2012) (accepting unofficial transcript under similar circumstances).

that it would be improper to prohibit or delay abandonment only so that the automatic stay would continue to cover the Gas Station and would continue to enjoin interested parties from pursuing their state law rights and remedies.

After the bankruptcy court orally ruled that it would authorize the Trustee's proposed abandonment, Gasprom requested that the court delay entry of the abandonment order. If the court immediately entered the abandonment order, Gasprom explained, it feared that Fateh would immediately proceed with a foreclosure sale she had scheduled for that day. But the court declined to delay entry of the abandonment order and instead suggested that, if Gasprom sought to further enjoin Fateh's foreclosure sale, Gasprom should seek an injunction from a state court.[5]

On the same day as the Abandonment Hearing, August 1, 2012, the bankruptcy court signed and entered the Trustee's proposed form of order authorizing the abandonment and declaring the Gas

---

[5] At the conclusion of the hearing, the court reiterated its view that, upon abandonment, the automatic stay would no longer protect the Gas Station from foreclosure:

> MS. LINTON [Gasprom's counsel]: Your honor, if I -- if I may clarify. The -- the stay remains in effect, even after this [Abandonment Order].
>
> [COURT]: No. Once the [Gas Station] is no longer property of the estate, if it's abandoned, the stay as to the [Gas Station] terminates.

Hr'g Tr. (Aug. 1, 2012) at 12:5-10.

5

Station abandoned ("Abandonment Order").[6] Even though the Abandonment Order was silent regarding the automatic stay, Fateh's affiliate and her successor in interest under the Deed of Trust Green Energy Holdings ("Green") proceeded with the foreclosure sale later that same day.

Before the Abandonment Hearing, on July 9, 2012, the Trustee issued a final report reflecting that there were no estate assets available for distribution. Thereafter, on August 16, 2012, the bankruptcy case was closed. As a combined result of the August 1, 2012 abandonment and the August 16, 2012 case closure, the automatic stay terminated for all purposes with respect to the Gas Station on August 16, 2012, a short time after the foreclosure sale. See § 362(c).

In September 2012, Gasprom moved to reopen its bankruptcy case, so that it could seek to set aside the foreclosure sale and commence contempt proceedings against Fateh, Green and others for violation of the automatic stay. According to Gasprom, the Abandonment Order caused the estate's interest in the Gas Station to revert to it, and notwithstanding the court's comments regarding the automatic stay at the Abandonment Hearing, §§ 362(a)(5) and (a)(6) continued to protect Gasprom from Fateh/Green's foreclosure. As a result, Gasprom asserted, when Fateh/Green proceeded with the foreclosure sale on August 1, 2012, they wilfully violated the stay, and the foreclosure sale was void as a violation of the stay.

---

[6] The Abandonment Order was not appealed by either side and is beyond the scope of our review in this appeal.

Fateh opposed the motion to reopen, arguing that Gasprom was not entitled to any of the relief that it intended to pursue upon reopening. Relying principally on a single Minnesota bankruptcy case, In re D'Annies Rest., Inc. v. N.W. Nat. Bank of Mankato (In re D'Annies Rest., Inc.), 15 B.R. 828 (Bankr. D. Minn. 1981), Fateh asserted that no aspect of the stay had survived the entry of the Abandonment Order. According to Fateh and In re D'Annies, when property of the estate is abandoned and the debtor is a corporation (as opposed to an individual debtor), the stay no longer protects either the debtor or the subject property from lien enforcement. Id. at 831-32.

The bankruptcy court held a hearing on the motion to reopen on October 23, 2012. As a threshold matter, the court granted the motion to reopen. No one has challenged that ruling on appeal. The court further held that the parties had fully briefed the issues concerning Gasprom's anticipated motion to set aside the foreclosure and Gasprom's anticipated motion for an order to show cause why Fateh, Green and others should not be held in contempt. Hence, the court explained, it was prepared to dispose of those matters as well.

The court essentially adopted Fateh's position that, upon entry of the Abandonment Order, the automatic stay no longer enjoined Fateh/Green's foreclosure sale of the Gas Station. In so ruling, the court relied on In re D'Annies and two other cases from outside the Ninth Circuit.

In the alternative, the court ruled that it was prepared to annul the automatic stay. Even though neither party in their papers had discussed or even mentioned the possibility of

7

annulment of the stay, the court ruled that, to the extent necessary to "validate the foreclosure," it would sua sponte grant relief from the stay retroactively and nunc pro tunc. Hr'g Tr. (Oct. 23, 2012) at 4:19-23. Indicating that it had been its intent at the Abandonment Hearing to permit the foreclosure sale to immediately proceed upon entry of the Abandonment Order, the court deemed it proper to further that intent by sua sponte annulling the stay, as a "belt and suspenders" measure. Id.

The bankruptcy court thereafter entered a written order granting the motion to reopen. It also entered on December 4, 2012, a separate written order denying the anticipated motion to set aside the foreclosure and denying the anticipated motion for an order to show cause re contempt. Gasprom timely appealed the the December 4, 2012 order.

**JURISDICTION**

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(A), and we have jurisdiction under 28 U.S.C. § 158.

**ISSUES**

Did the bankruptcy court err when it held in the December 4, 2012 order that Fateh/Green's foreclosure sale did not violate the automatic stay?

Did the bankruptcy court abuse its discretion when it annulled the automatic stay in order to retroactively validate Fateh/Green's foreclosure sale?

**STANDARDS OF REVIEW**

We review de novo the bankruptcy court's interpretation of the Bankruptcy Code. See Danielson v. Flores (In re Flores),

8

-- F.3d --, 2013 WL 4566428, at *1 n.4 (9th Cir. Aug. 29, 2013) (en banc).

A bankruptcy court's decision to retroactively annul the automatic stay is reviewed for an abuse of discretion. Nat'l Envtl. Waste Corp. v. City of Riverside (In re Nat'l Envtl. Waste Corp.), 129 F.3d 1052, 1054 (9th Cir. 1997); Williams v. Levi (In re Williams), 323 B.R. 691, 696 (9th Cir. BAP 2005).

A bankruptcy court abuses its discretion if its decision is based on an incorrect legal rule, or if its findings of fact were illogical, implausible, or without support in the record. United States v. Hinkson, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc).

**DISCUSSION**

Generally speaking, actions taken in violation of the automatic stay are considered void ab initio. Griffin v. Wardrobe (In re Wardrobe), 559 F.3d 932, 934 (9th Cir. 2009); Schwartz v. United States (In re Schwartz), 954 F.2d 569, 571 (9th Cir. 1992). And creditors who attempt to enforce their nonbankruptcy rights against a debtor or its property without first obtaining relief from the stay may be held liable for damages for contempt of court. See Johnston Envtl. Corp. v. Knight (In re Goodman), 991 F.2d 613, 620 (9th Cir. 1993) (holding that a corporation may recover civil contempt damages for an automatic stay violation).

The bankruptcy court here concluded that the August 1, 2012 foreclosure sale had not violated the automatic stay. The bankruptcy court reasoned that the Trustee's abandonment of the Gas Station earlier that same day had fully terminated the stay as to the Gas Station. We disagree. By operation of law, the

9

August 1, 2012 Abandonment Order only terminated one aspect of the stay, the aspect protecting the Gas Station as "property of the estate." Upon abandonment, the Gas Station no longer was property of the estate; title to the Gas Station reverted to Gasprom. See Catalano v. Comm'r, 279 F.3d 682, 685 (9th Cir. 2002). Hence, the aspect of the stay protecting estate property no longer applied. See § 362(c)(1).

But the abandonment did not by operation of law terminate the aspect of the stay arising from § 362(a)(5), which protects "property of the debtor." Absent a ruling by the court granting relief from stay under § 362(d) so as to permit foreclosure to occur, § 362(a)(5) continued to protect the Gas Station from foreclosure, at least until the bankruptcy court closed Gasprom's bankruptcy case on August 16, 2012. See § 362(c)(2).

The canons of statutory interpretation support our construction of § 362(a)(5). In accordance with those canons, our analysis must begin with the statutory text. See Lamie v. United States Trustee, 540 U.S. 526, 534 (2004). Our analysis also must end with the statutory text if "'the statutory language is unambiguous' . . . and 'the statutory scheme is coherent and consistent.'" Schindler Elevator Corp. v. United States ex rel. Kirk, -- U.S. --, 131 S.Ct. 1885, 1893 (2011) (quoting Robinson v. Shell Oil Co., 519 U.S. 337, 340 (1997)). Put another way, when the plain and unambiguous language of the statute does not lead to absurd results, the courts' only role is to apply the statute according to its terms. See Lamie, 540 U.S. at 534.

Section 362(a)(5) extends the protection of the automatic stay to "property of the debtor." "Debtor" is a defined term in

10

the Bankruptcy Code, so there can be no doubt as to what Congress intended that word to mean. The term "debtor" means any "person or municipality" for which a bankruptcy case has been commenced. See § 101(13). In turn, for purposes of the Bankruptcy Code, a "person" is explicitly defined as including individuals, partnerships and corporations. § 101(41).

Nor can there be any genuine doubt what the entire phrase "property of the debtor" means. Without any limiting or qualifying language in the statutory text, the phrase must refer to property interests held by any of the above-referenced types of debtors. If Congress wanted to limit "property of the debtor" to exclude property of corporate and partnership debtors, it only would have needed to add the word "individual" before the word "debtor". Or it could have used the same phraseology it used in § 362(c)(3), in which it refers to "a debtor who is an individual." Congress obviously knew how to limit the term debtor when it wanted to do so. It did not so limit the phrase "property of the debtor" in § 362(a)(5). We cannot and will not read the additional word "individual" into the statute, when it appears that Congress affirmatively and specifically omitted that word. See Lamie, 540 U.S. at 538. If Congress actually intended to so limit § 362(a)(5), then it will need to amend the statute. Id. at 542.

Several bankruptcy cases from both within and without the Ninth Circuit have similarly interpreted the effect of abandonment on the automatic stay. See, e.g., Mut. Ins. Co. of New York v. County of Fresno (In re D. Papagni Fruit Co.), 132 B.R. 42, 45 (Bankr. E.D. Cal. 1991); Coronado v. Beach Furniture

11

& Appliance (In re Coronado), 11 B.R. 8, 9 (Bankr. D. Ariz. 1981); Guild Mortgage Co. v. Cornist (In re Cornist), 7 B.R. 118, 120 (Bankr. S.D. Cal. 1980); see also Gen. Motors Acceptance Corp. v. Bell (In re Bell), 700 F.2d 1053, 1057-58 (6th Cir. 1983); Young v. Twin States Fin., Inc. (In re Young), 2012 WL 1189900, at **5-6 (Bankr. S.D. Miss. 2012); In re Vicente, 446 B.R. 26, 29-30 (Bankr. D. Mass. 2011); Adams v. Hartconn Assocs., Inc. (In re Adams), 212 B.R. 703, 710 (Bankr. D. Mass. 1997); In re Lair, 235 B.R. 1, 21-22 (Bankr. M.D. La. 1999); Gassaway v. Fed. Land Bank of New Orleans (In re Gassaway), 28 B.R. 842, 846 (Bankr. N.D. Miss. 1983); In re Cruseturner, 8 B.R. 581, 592 (Bankr. D. Utah 1981). These cases stand for the general proposition that abandoned property continues to be protected by the automatic stay to the extent it has reverted back to the debtor, unless and until the case is closed or dismissed, or a discharge is granted or denied. Accord, H.R. Rep. No. 95-595 at 343 (1977)(stating that, while § 362(c)(1) terminates the automatic stay as to estate property when the subject property is no longer estate property, that provision "does not terminate the stay against property of the debtor if the property leaves the estate and goes to the debtor.").

Fateh/Green doubtlessly would argue that the above-cited cases are distinguishable because the debtors in these cases typically were individuals and not corporations like Gasprom. However, as we have explained above, there is no proper legal basis for excluding corporate debtors from the protection explicitly afforded to all debtors under § 362(a)(5).

The rules of statutory construction require us to

12

additionally determine whether the meaning we have derived from the text of the statute is part of a coherent and consistent statutory scheme.  See Schindler Elevator Corp., -- U.S. at --, 131 S.Ct. at 1893 (2011); see also Gale v. First Franklin Loan Servs., 701 F.3d 1240, 1244 (9th Cir. 2012) (holding that the court must consider the statutory text in context and with a view to the entire statutory scheme).

Nothing in the context or scheme of § 362 requires us to interpret "property of the debtor" differently.  The two articulated purposes of the automatic stay are broad.  See Burkart v. Coleman (In re Tippett), 542 F.3d 684, 689-90 (9th Cir. 2008).  First, the stay gives the debtor respite from any creditor efforts to enforce rights against the debtor and its property.  Id.  And second, it also protects the creditors from each other, as it prevents the creditors from racing to be the first to claim the debtor's limited assets.  Id.  In turn, these two purposes facilitate and promote the tandem bankruptcy goals of a fresh start for the the debtor and equitable distribution for creditors.  See id.

In light of § 362's purposes, the scope of the stay granted in § 362(a) is interpreted very broadly, and the exceptions set forth in § 362(b) are interpreted narrowly.  See Snavely v. Miller (In re Miller), 397 F.3d 726, 730-31 (9th Cir. 2005) (citing Stringer v. Huet (In re Stringer), 847 F.2d 549, 552 n.4 (9th Cir. 1988)).  Thus, the context and statutory scheme in which Congress used the phrase "property of the debtor" in § 362(a)(5) supports our refusal to read into the text any limiting or qualifying language that Congress chose not to

13

include.

Relying on In re D'Annies, 15 B.R. at 831, the bankruptcy court held that, after abandonment of estate property, § 362(a)(5) only protects a debtor from foreclosure of that property if that debtor is an individual. We decline to follow In re D'Annies. In re D'Annies invoked certain policy concerns in an attempt to justify a narrow interpretation of § 362(a)(5), an interpretation that would exclude corporate and partnership debtors from the protections afforded under § 362(a)(5). But In re D'Annies' narrow interpretation is inconsistent with the plain reading of the statutory text and with the statutory scheme and context we described above. Even if there were some validity to In re D'Annies' policy concerns, those concerns do not permit us to alter the meaning of Congress's plain and unambiguous statutory language. See Lamie, 540 U.S. at 538. As the Ninth Circuit has noted, the Supreme Court "frowns" on courts that attempt to modify unambiguous provisions of the Bankruptcy Code for policy reasons. See Sherwood Partners, Inc. v. Lycos, Inc., 394 F.3d 1198, 1202 n.4 (9th Cir. 2005) (citing Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A., 530 U.S. 1, 14 (2000)).

The bankruptcy court also relied on Dewsnup v. Timm (In re Dewsnup), 908 F.2d 588, 590 (10th Cir. 1990), aff'd, 502 U.S. 410 (1992). At the October 23, 2012 hearing, the bankruptcy court recited and relied upon the following language from Dewsnup:

> [Section 554(a)] allows abandonment of property that "is burdensome to the estate or that is of inconsequential value and benefit to the estate." Property abandoned under this section ceases to be part

14

of the estate. It reverts to the debtor <u>and stands as if no bankruptcy petition was filed</u>.

<u>Id.</u> at 590 (citations omitted and emphasis added).

We do not dispute the correctness of this statement. Indeed, the Ninth Circuit Court of Appeals has made similar statements. <u>See, e.g.</u>, <u>Catalano</u>, 279 F.3d at 685 ("Upon abandonment, the debtor's interest in the property is restored <u>nunc pro tunc</u> as of the filing of the bankruptcy petition."). These statements reflect the unremarkable proposition that, after an abandonment of estate property, the debtor holds the same legal interest in the abandoned property that it held at the time of its bankruptcy filing. The bankruptcy court here misconstrued these statements. It conflated the issue of the debtor's legal interest in abandoned property with the issue of the impact of abandonment on the automatic stay.

In sum, the bankruptcy court erred as a matter of law when it concluded that, immediately upon abandonment, the automatic stay no longer enjoined Fateh/Green from foreclosing on the Gas Station.

The bankruptcy court's December 4, 2012 order also provided for annulment of the automatic stay, for the nunc pro tunc termination of the stay as to the Gas Station in order to retroactively validate the foreclosure sale. The bankruptcy court relied on this annulment as an alternate basis for concluding that the foreclosure sale did not violate the automatic stay.

In deciding whether to annul the stay, a bankruptcy court ordinarily should examine the circumstances of the specific case

15

and balance the equities of the parties' respective positions. See Nat'l Envtl. Waste Corp., 129 F.3d at 1055; Fjeldsted v. Lien (In re Fjeldsted), 293 B.R. 12, 24 (9th Cir. BAP 2003). In balancing the equities, the court may consider a number of different factors. In re Fjeldsted, 293 B.R. at 24-25. While any specific list of relevant factors is subject to modification depending on the circumstances of the particular case, In re Fjeldsted suggested that the following list of factors could be used as a general guideline or framework for assessing the equities:

1. Number of filings;
2. Whether, in a repeat filing case, the circumstances indicate an intention to delay and hinder creditors;
3. A weighing of the extent of prejudice to creditors or third parties if the stay relief is not made retroactive, including whether harm exists to a bona fide purchaser;
4. The Debtor's overall good faith (totality of circumstances test);
5. Whether creditors knew of stay but nonetheless took action, thus compounding the problem;
6. Whether the debtor has complied, and is otherwise complying, with the Bankruptcy Code and Rules;
7. The relative ease of restoring parties to the status quo ante;
8. The costs of annulment to debtors and creditors;
9. How quickly creditors moved for annulment, or how quickly debtors moved to set aside the sale or violative conduct;
10. Whether, after learning of the bankruptcy, creditors proceeded to take steps in continued violation of the stay, or whether they moved expeditiously to gain relief;
11. Whether annulment of the stay will cause irreparable injury to the debtor;
12. Whether stay relief will promote judicial economy or other efficiencies.

Id. at 25 (citations omitted).

Here, the bankruptcy court identified only a single factor as justifying annulment of the stay: because it previously had indicated at the Abandonment Hearing that Fateh/Green could

16

proceed with the foreclosure, it sua sponte concluded that annulment should be granted. And it reached this conclusion without any advance notice to the parties and without any opportunity for the parties to submit any evidence or argument concerning the equities.

In balancing the equities, a single factor may so outweigh the consideration of all other factors that the single factor may be dispositive. Id. Here, however, the record reflects that the bankruptcy court did not actually attempt to weigh anything. In other words, the bankruptcy court did not utilize the appropriate legal framework because there is no indication that it attempted to balance the equities. Nor did it give the parties any opportunity to develop the record concerning the equities. As a result, the bankruptcy court abused its discretion when it ruled that the stay should be annulled. See Hinkson, 585 F.3d at 1262 (holding that trial court abuses its discretion if it does not identify the correct legal rule to apply).

On remand, the bankruptcy court must give the parties an opportunity to brief and present evidence regarding the equities of granting an annulment if the court is intent on moving forward, sua sponte, with stay annulment proceedings.[7]

---

[7] In light of our decision, we decline to express any opinion at this time regarding the propriety of the bankruptcy court sua sponte granting annulment. Of course, the court on remand is not required to further consider annulment unless Fateh/Green should see fit to formally request such relief by filing an appropriate motion. Nor would it be necessary for the court to reopen the bankruptcy case in order to address such a motion. See Aheong v. Mellon Mortgage Co. (In re Aheong), 276 B.R. 233, 242 (9th Cir. BAP 2002)(holding that bankruptcy court had ancillary jurisdiction to decide motion to annul the stay
(continued...)

17

**CONCLUSION**

For the reasons set forth above, the December 4, 2012 order is VACATED, and this matter is hereby REMANDED for further proceedings consistent with this decision.

---

[7](...continued) without reopening the bankruptcy case or vacating the case dismissal order).