**NOT FOR PUBLICATION**

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT



## UNITED STATES BANKRUPTCY APPELLATE PANEL

### OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No.   CC-15-1084-KiKuF |
| ESTAVAN CAPITAL LLC, | Bk. No.   14-17882-RK |
| Debtor. | |
| ESTAVAN CAPITAL LLC, | |
| Appellant, | |
| v. | **M E M O R A N D U M**[1] |
| U.S. BANK NATIONAL ASSOCIATION, Trustee for Lehman XS Trust, Series 2007-15N, | |
| Appellee. | |

Argued and Submitted on October 22, 2015,
at Los Angeles, California

Filed - December 1, 2015

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Robert N. Kwan, Bankruptcy Judge, Presiding

Appearances:     Stanley D. Bowman argued for appellant Estavan Capital LLC; Leslie Marie Klott of the Law Offices of Les Zieve argued for appellee U.S. Bank National Association, as Trustee for Lehman XS Trust, Series 2007-15N.

Before:   KIRSCHER, KURTZ and FARIS, Bankruptcy Judges.

_____

[1] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8024-1.

Chapter 7 debtor Estavan Capital LLC appeals an order granting the motion of U.S. Bank National Association, as Trustee for Lehman XS Trust, for annulment of the automatic stay under § 362(d)(1)[2] and in rem relief under § 362(d)(4). We AFFIRM.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY[3]

Estavan is a Wyoming limited liability company that was formed for estate purposes and Nevine Carmelle is its managing member. In 2005, Carmelle transferred her property located at 52 Via Brida, Rancho Santa Margarita, California ("Property") to Estavan. Two years later, Estavan transferred the Property back to Carmelle so that she could use it as collateral for a $600,000 loan from Ocwen.

At some point, U.S. Bank acquired the loan from Ocwen and held a first lien position on the Property based on a note secured by a deed of trust. The servicer/trustee for the debt was Sage Point Lender Services, LLC. On or about August 10, 2012, Carmelle transferred title to the Property back to Estavan by Grant Deed.

Carmelle testified that she lived at the Property on and off

[2] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532. "Rule" references are to the Federal Rules of Bankruptcy Procedure.

[3] The parties failed to include in the record on appeal some of the relevant documents; we have exercised our discretion to reach the merits of the appeal by independently reviewing the bankruptcy court's electronic docket and the imaged documents attached thereto. See O'Rourke v. Seaboard Sur. Co. (In re E.R. Fegert, Inc.), 887 F.2d 955, 957-58 (9th Cir. 1988); Atwood v. Chase Manhattan Mortg. Co. (In re Atwood), 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003). Under Rule 201, Fed. R. Evid., courts may take judicial notice of undisputed matters of public record, including documents on file in federal or state courts. Harris v. City of Orange, 682 F.3d 1126, 1131-32 (9th Cir. 2012).

-2-

between 1997 and 2014. In June 2014, a tenant moved in with Carmelle. Estavan made the loan payments on the Property from 2005 until sometime in 2012, when Estavan defaulted on the loan payments and the lender began refusing to accept payments. While not in the record, the parties referenced both a notice of default as well as a notice of a trustee's sale. Estavan filed a voluntary chapter 7 petition on August 21, 2013. "Ocwen loan services LLC" was the only creditor listed on the creditor matrix. That case was dismissed on September 11, 2013, for Estavan's failure to file all the documents required under Rules 1007 and 3015(b). Estavan was barred from filing another bankruptcy petition for 180 days.

On April 24, 2014, Estavan's attorney of record, Stanley Bowman ("Bowman") electronically filed another voluntary chapter 7 petition on behalf of Estavan. Just prior to filing the petition, Bowman had his assistant telephone Sage Point to advise Sage Point of Estavan's imminent chapter 7 bankruptcy filing. Bowman and Carmelle stood by the assistant's desk when the assistant allegedly telephoned Sage Point.

Estavan's April 24, 2014, petition was signed by Carmelle as Estavan's authorized manager, declaring under penalty of perjury that the information provided in the petition was true and correct. After receiving a bankruptcy case number, Bowman had his assistant again telephone Sage Point on April 24, 2014, but the assistant was put on hold and the call was eventually disconnected.

Bowman's assistant then sent an email to Sage Point at an email address allegedly obtained during the assistant's first

-3-

telephone call to Sage Point. The email included Estavan's name and chapter 7 bankruptcy case number, but it did not include a "TS number,"[4] did not list Carmelle's name and did not list the address of the Property. Bowman did not receive a reply to the email. Sage Point's default assistant Stephanie Vasquez ("Vasquez") testified that she did not receive the email from Bowman's assistant and could not find it in Sage Point's system and further testified that Sage Point would not have given out her email address but instead would have given a borrower Sage Point's fax number.

The creditor matrix filed with the petition lists three creditors, including Sage Point with an address of "400 Exchange Suite [blank][5], Irvine, CA 92602[,]" and the original lender, "Ocwen loan services LLC, PO box 780, Waterloo,, LA 50704."[6] On April 27, 2014, a notice of commencement of case was mailed to creditors, setting forth deadlines and warnings against violating the automatic stay. The notice was sent to Sage Point at "400 Exchange Suite [blank], Irvine, CA 92602-1340," and was sent to Ocwen at the address in Louisiana. Sage Point's attorney, Ryan Paul Spitalnick, who oversees and manages Sage Point's day-to-day operations, testified that Sage Point's address is 400 Exchange, Suite #110, Irvine, CA 92602, that Sage Point's name is not on the

---

[4] During oral argument, counsel explained that a "TS number" is the trustee's notice of sale number.

[5] There is no suite number listed.

[6] The zip code 50704 pertains to Waterloo, Iowa, the abbreviation for which is "IA." "LA" is the abbreviation for the State of Louisiana.

-4-

door of its suite,[7] that it has no separate mailbox, and that Sage Point's mail must be delivered to the front desk inside Suite #110.

In its chapter 7 petition, Estavan lists its street address as "700 N. Pacific Coast Hwy, Suite 202A, Redondo Beach, CA 90277," which is the same address listed for Bowman. Estavan did not list its prior bankruptcy case on the petition, instead stating "None" where required to disclose all prior bankruptcy cases filed within the last 8 years.[8]

Estavan filed its schedules on May 8, 2014, listing the Property as its sole asset. Estavan listed the current value of Estavan's interest in the Property as $456,000 and the amount of secured claim thereon as $0.00. Estavan did not file schedules I and J and disclosed no income or expenses on its statement of financial affairs.

Estavan's Schedule D listed two creditors holding secured claims: Sage Point at an address of 400 Exchange, Suite [blank], Irvine, CA 92602; and SBS Lien Services. Both secured claims were listed at $0 and no detail was provided as to the nature of the lien or value of the property subject to the lien. Ocwen was listed on Schedule F as a creditor holding an unsecured nonpriority claim in the amount of $0.00. U.S. Bank was not

---

[7] The door to Suite 110 says "Trustee" on it.

[8] Notice of Estavan's prior bankruptcy was entered on the bankruptcy court's docket on April 25, 2014. Carmelle had also previously filed an individual chapter 13 bankruptcy case in 2009 under the name "Nezine Tadrous." That case was converted to a chapter 7 bankruptcy shortly after it was filed. Bowman was Carmelle's attorney of record in her 2009 bankruptcy and was Estavan's attorney of record in its 2013 bankruptcy.

listed as a creditor on Estavan's schedules.

On May 23, 2014, twenty nine days after Estavan filed its second chapter 7 bankruptcy petition, Sage Point, as foreclosure trustee, conducted a foreclosure sale of the Property. Following the foreclosure sale, a trustee's deed was recorded on June 3, 2014, in which Sage Point conveyed title of the Property to U.S. Bank. On June 18, 2014, U.S. Bank served a notice to quit addressed to "Nevine Carmelle and all unknown occupants" of the Property. On July 15, 2014, U.S. Bank initiated an unlawful detainer action in the state superior court of California against "Nevine Carmelle, and Does 1 through 5."

Thereafter, on August 22, 2014, U.S. Bank filed a motion seeking relief from the automatic stay. The motion explains that U.S. Bank acquired title to the Property by foreclosure sale after Estavan's second bankruptcy petition was filed and recorded the deed as provided under state law, but before U.S. Bank knew of the filing of the bankruptcy petition. Estavan opposed U.S. Bank's motion.

On September 29, 2014, at the case trustee's request, Estavan's chapter 7 case was dismissed for its failure to appear at a continued § 341 meeting of creditors.[9] The order dismissing the case vacated the stay and provided that pending motions were moot and dismissed. However, in that order of dismissal, the bankruptcy court retained jurisdiction on all issues under § 362.

---

[9] Carmelle testified that neither she nor any of the other members of Estavan attended the first meeting of creditors because one of the members was in surgery on that date. Carmelle attended the next meeting of creditors, but did not attend the continued meeting of creditors because the foreclosure sale had already occurred by that time.

-6-

On October 27, 2014, U.S. Bank filed an amended motion to modify stay seeking relief from the automatic stay or, in the alternative, an order confirming that the stay did not apply. After repeating the allegations and requests for relief of its original motion, U.S. Bank requested annulment of the stay retroactive to the petition date in order to validate the foreclosure sale. U.S. Bank similarly requested that its postpetition acts to enforce its remedies not be deemed a violation of the stay. Debtor opposed U.S. Bank's amended motion. A hearing on the amended motion was held on December 9, 2014, January 13, 2015, and February 11, 2015.

On February 25, 2015, the bankruptcy court entered its memorandum decision. After analyzing the twelve factors identified in In re Fjeldsted, 293 B.R. 12, 25 (9th Cir. BAP 2003), the court concluded that relief for cause with retroactive annulment of the stay should be granted under § 362(d)(1) and that in rem relief should be granted under § 362(d)(4) "because of the multiple bankruptcy case filings affecting the Property and the petition in this case was intended to delay or hinder creditors."

The court made specific findings regarding the telephone calls allegedly made by Bowman's assistant on April 24, 2014, the email sent to Vasquez and the mailing to Sage Point, which lacked a complete address. The court concluded that the testimony of Bowman and Carmelle regarding the telephone calls was not credible because both Bowman and Carmelle lacked personal knowledge as to what number Bowman's assistant dialed or with whom she spoke. The court found it more likely than not that the email was delivered to Vasquez at Sage Point, but further found that the email did not

-7-

contain sufficient context to connect Estavan with Carmelle's loan, which it was servicing for U.S. Bank. As for the mail delivery of the bankruptcy notice, the court found an expert witness's testimony credible and concluded that Sage Point likely received notice of Estavan's bankruptcy filing, but that Estavan's initial filings failed to provide Sage Point with notice that its enforcement actions regarding Carmelle's loan and the Property would have been affected by Estavan's bankruptcy filing or the automatic stay.

On March 6, 2015, the court entered its order granting U.S. Bank's amended motion for relief from stay under §§ 362(d)(1) and § 362(d)(4) and retroactively terminated and annulled the stay of § 362(a) to Estavan's bankruptcy petition date. Estavan timely appealed.

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(G). We have jurisdiction under 28 U.S.C. § 158.

## III. ISSUE

Did the bankruptcy court misapply the equitable factors articulated in In re Fjeldsted, 293 B.R. 12 (9th Cir. 2003), when it granted U.S. Bank retroactive relief from the automatic stay?

## IV. STANDARDS OF REVIEW

Findings of fact are reviewed under the clearly erroneous standard. Rule 8013. A factual finding is clearly erroneous if the appellate court, after reviewing the record, has a firm and definite conviction that a mistake has been committed. Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 573 (1985). If two views of the evidence are possible, the trial judge's choice

between them cannot be clearly erroneous. Id. at 574. A trial court's finding that a witness is not credible is entitled to special deference. Allen v. Iranon, 283 F.3d 1070, 1078 n.8 (9th Cir. 2002); Anderson, 470 U.S. at 573; In re Fjeldsted, 293 B.R. at 18 ("The reviewing court must give due regard to the opportunity of the bankruptcy court to judge the credibility of the witnesses.")

A decision to lift the automatic stay for cause under § 362(d) is reviewed for an abuse of discretion. Groshong v. Sapp (In re Mila, Inc.), 423 B.R. 537, 542 (9th Cir. BAP 2010); In re Leisure Corp., 234 B.R. 916, 920 (9th Cir. BAP 1999); Mataya v. Kissinger (In re Kissinger), 72 F.3d 107, 108-09 (9th Cir. 1995). A bankruptcy court's decision to grant retroactive relief from the automatic stay is reviewed for an abuse of discretion. In re Fjeldsted, 293 B.R. at 18. A bankruptcy court abuses its discretion if it applies the wrong legal standard, misapplies the correct legal standard, or if its factual findings are illogical, implausible, or without support in inferences that may be drawn from the facts in the record. In re First Yorkshire Holdings, Inc., 470 B.R. 864, 868 (9th Cir. BAP 2012) (citing United States v. Hinkson, 585 F.3d 1247, 1262 (9th Cir.2009) (en banc)); see also TrafficSchool.com, Inc. v. Edriver Inc., 653 F.3d 820, 832 (9th Cir. 2011).

**V. DISCUSSION**

In its statement of issues, Estavan contends three issues exist on appeal:

"1. Did the Trial Court err in granting Motion for Relief From Stay under 11 U.S.C. § 362(d)(1)?

-9-

2. Did the Trial Court err in granting Motion for Relief From Stay under 11 U.S.C. § 362(d)(4)?

3. Did the Trial Court err in annulling Debtor's automatic stay retroactive to the bankruptcy petition date?"

Estavan's brief restates the issue as: "Did the Court abused [sic] its discretion in granting Respondent's motion requesting retroactive annulment of the automatic stay Debtor obtained upon the filing of its Chapter 7 bankruptcy?" Estavan's brief on appeal does not specifically address §§ 362(d)(1) or (4). We therefore consider the first two issues raised in Estavan's statement of issues abandoned. See City of Emeryville v. Robinson, 621 F.3d 1251, 1261 (9th Cir. 2010) (appellate courts in this circuit "will not review issues which are not argued specifically and distinctly in a party's opening brief"); Branam v. Crowder (In re Branam), 226 B.R. 45, 55 (9th Cir. BAP 1998), aff'd, 205 F.3d 1350 (9th Cir. 1999) (an issue not adequately addressed by appellant in his opening brief is deemed abandoned). Estavan instead complains that the bankruptcy court erred because it kept a scorecard rather than balancing the equities.

As a threshold matter, the burden of proof under § 362(d) on the issue of the debtor's equity in property rests with the moving party, while the party opposing such relief has the burden of proof on all other issues. § 362(g). Although Estavan alleged in its opposition to U.S. Bank's amended motion that equity existed in the Property, equity was never an issue. Carmelle testified that the loan debt was approximately $600,000 and Estavan listed the current value of the Property as $456,000 on its Schedule A. The record establishes that Estavan had no equity in the Property.

-10-

Once U.S. Bank established a prima facie case that cause existed for relief under § 362(d)(1), the burden shifted to Estavan to show that relief from the stay was not warranted. United States v. Gould (In re Gould), 401 B.R. 415, 426 (9th Cir. BAP 2009); Duvar Apt., Inc. v. FDIC (In re Duvar Apt., Inc.), 205 B.R. 196, 200 (9th Cir. BAP 1996).

Acts done in violation of the automatic stay are void, not simply voidable. See Schwartz v. United States (In re Schwartz), 954 F.2d 569, 571, 575 (9th Cir. 1992). Section 362(d), however, authorizes annulment of the automatic stay in order to validate otherwise void acts. Lone Star Sec. & Video, Inc. v. Gurrola (In re Gurrola), 328 B.R. 158, 172 (9th Cir. BAP 2005). Determining whether cause exists to annul the stay is a case-by-case inquiry based on a balance of the equities. Nat'l Envtl. Waste Corp. v. City of Riverside (In re Nat'l Envtl. Waste Corp.), 129 F.3d 1052, 1055 (9th Cir. 1997), cert. denied, 524 U.S. 952 (1998). In conducting this inquiry the bankruptcy court, among other factors, should consider whether the creditor knew of the bankruptcy when violating the stay and whether the debtor's conduct was unreasonable, inequitable or prejudicial to the creditor. Nat'l Envtl. Waste Corp., 129 F.3d at 1055.

In Fjeldsted, we approved additional factors for consideration in assessing the equities. The twelve nonexclusive factors are: (1) number of filings; (2) whether, in a repeat filing case, the circumstances indicate an intention to delay and hinder creditors; (3) a weighing of the extent of prejudice to creditors or third parties if the stay relief is not made retroactive, including whether harm exists to a bona fide

-11-

purchaser; (4) the debtor's overall good faith (totality of circumstances test); (5) whether creditors knew of stay but nonetheless took action, thus compounding the problem; (6) whether the debtor has complied, and is otherwise complying, with the Bankruptcy Code and Rules; (7) the relative ease of restoring parties to the status quo ante; (8) the costs of annulment to debtors and creditors; (9) how quickly creditors moved for annulment, or how quickly debtor moved to set aside the sale or violative conduct; (10) whether, after learning of the bankruptcy, creditors proceeded to take steps in continued violation of the stay, or whether they moved expeditiously to gain relief; (11) whether annulment of the stay will cause irreparable injury to the debtor; and (12) whether stay relief will promote judicial economy or other efficiencies. Fjeldsted, 293 B.R. at 25. The Panel in Fjeldsted cautioned that the twelve factors "are merely a framework for analysis and not a scorecard," and that "[i]n any given case, one factor may so outweigh the others as to be dispositive." Id.

As noted earlier, Debtor argues that the bankruptcy court ignored the Panel's caution in Fjeldsted by keeping a scorecard rather than balancing the equities. Debtor mischaracterizes the bankruptcy court's analysis under Fjeldsted. When reviewing for abuse of discretion, as here, we will reverse only if we hold a "definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors." Smith v. Jackson, 84 F.3d 1213, 1221 (9th Cir. 1996). We have no such conviction here.

The bankruptcy court's detailed findings, as set forth in its

memorandum decision, show that the bankruptcy court thoughtfully and thoroughly considered all the Fjeldsted factors. We will not find an abuse of discretion when a court considers all twelve factors listed in Fjeldsted when deciding to annul the stay, for the obvious reason that we meant for courts to use the twelve factors as a framework for analysis. Fjeldsted, 293 B.R. at 25. In Gasprom, Inc. v Fateh (In re Gasprom, Inc.), 500 B.R. 598, 607-08 (9th Cir. BAP 2013), we vacated a bankruptcy court's annulment of the stay when the court justified annulment of the stay after identifying only a single Fjeldsted factor. We concluded the bankruptcy court abused its discretion because it "did not actually attempt to weigh anything" and thus did not utilize the appropriate legal framework "because there was no indication that it attempted to balance the equities." In re Gasprom, 500 B.R. at 608.

In the instant case, the bankruptcy court acknowledged in its memorandum decision that the factors are a framework not a scorecard. If the court had meant to use them as a scorecard it would have stopped its analysis after its discussion of the twelve factors and decided the issue eleven to one. However, it continued its analysis by noting that factors one, two, three, four and six were "particularly influential in its analysis" of U.S. Bank's request for annulment.

The bankruptcy court discussed all twelve Fjeldsted factors in varying detail and concluded that all, except number seven, weighed in favor of annulment. Estavan's brief contests each of the eleven factors in favor of annulment, but fails to persuade either individually or together that the bankruptcy court abused

-13-

its discretion.

Estavan also argues: "The filing of the bankruptcy gave the Debtor belief that the property would not be foreclosed on by the creditor" and that it "will unjustly suffer a harm in the loss of its only asset" if the stay is annulled. These arguments reflect a misconception of bankruptcy law governing a creditor's right to relief from the stay, Carmelle's loan and deed of trust documents, and principles of equity.

A fundamental maxim of equity jurisprudence is: "One who seeks equity must do equity." Dickson, Carlson & Campillo v. Pole, 83 Cal. App. 4th 436, 445 (2000) (quoting 2 Pomeroy, Equity Jurisprudence (5th ed. 1941) § 385, pp. 51-53). This maxim means that "a court will not grant equitable relief unless the plaintiff acknowledges or provides for the defendant's equitable rights arising from the same subject matter." Miller v. Wash. Mut. Bank FA, 776 F. Supp. 2d 1064, 1070 (N.D. Cal. 2011) (quoting Pole, 83 Cal. App. 4th at 445-46).

Estavan does not dispute that no payments have been made to U.S. Bank since 2012, while meanwhile Debtor enjoys free use of the Property where Carmelle lives, plus income from rent paid by Carmelle's roommate. Estavan cannot expect equitable relief in such circumstances.

The note and deed of trust are not in evidence, which weighs against Estavan, as the party with the burden of proof, but it is reasonable to assume that Estavan had the right under nonbankruptcy law to cure the default or pay off the loan in full, or attend the foreclosure sale and bid. Estavan failed to show that it had any intent to cure the default on the note or pay it

off in full. Another foreclosure would likely occur in due course if the stay is not annulled and, thus, annulment of the stay will not cause irreparable injury to the Debtor.

In sum, we conclude that the bankruptcy court's findings on the eleven Fjeldsted factors it analyzed were not illogical, implausible or without support from inferences that may be drawn from the record. In re First Yorkshire Holdings, 470 B.R. at 868. The record shows that the bankruptcy court correctly applied the balancing of equities test under Fjeldsted, without affording undue weight to any one factor. Therefore, we conclude the bankruptcy court did not abuse its discretion in finding that cause existed for retroactive annulment of the stay to validate the foreclosure sale.

**VI. CONCLUSION**

For the foregoing reasons, we AFFIRM the decision of the bankruptcy court.

-15-