**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

In the Matter of: CRAIG L. TIPPETT;
CHRISTINE L. TIPPETT,

*Debtors,*

MICHAEL F. BURKART, Chapter 7
Trustee,

*Appellant,*

v.

SEITU O. COLEMAN; IRWIN
MORTGAGE COMPANY,

*Appellees.*

No. 06-15411

BAP No.
EC-05-01087-BMaS

OPINION

Appeal from the Ninth Circuit
Bankruptcy Appellate Panel
Brandt, Marlar, and Smith, Bankruptcy Judges, Presiding

Argued and Submitted
December 5, 2007—San Francisco, California

Filed September 4, 2008

Before: Betty B. Fletcher, William C. Canby, Jr., and
Johnnie B. Rawlinson, Circuit Judges.

Opinion by Judge Canby

12141

**COUNSEL**

Gregory J. Hughes, Hughes & Pritchard, LLP, Roseville, California, for appellant.

Mary E. Olden, McDonough, Holland & Allen PC, Sacramento, California, for appellees.

James A. Tiemstra, Oakland, California, for amicus curiae.

**OPINION**

CANBY, Circuit Judge:

After filing a joint Chapter 7 petition in bankruptcy and without authorization, Craig L. Tippett and Christine L. Tippett retained a realtor and sold their homestead in Sacramento County, California to Seitu O. Coleman. The Trustee in bankruptcy had not recorded the Tippetts' Chapter 7 petition in the office of the Sacramento County Recorder, and the Tippetts did not reveal their bankruptcy to their realtor or to Coleman. It is undisputed that Coleman is a bona fide purchaser under California law. The Trustee filed an adversary proceeding

seeking, inter alia, to quiet title to the residence in the bankruptcy estate. The bankruptcy court ruled in favor of the Trustee. On appeal, the Bankruptcy Appellate Panel ("BAP") reversed and entered judgment in favor of Coleman and his purchase-money lenders. We now hold that the Bankruptcy Code does not preempt California's bona fide purchaser statute as it applies to this transaction. In addition, we adhere to the established proposition that the automatic stay triggered by a debtor's bankruptcy petition does not void transfers of estate property initiated by the debtor. We therefore affirm the BAP's decision in favor of the bona fide purchaser and his lenders.

## BACKGROUND

In May 2001, the Tippetts filed a joint Chapter 7 petition. Appellant Michael Burkart was appointed trustee. In their petition, the Tippetts listed their residence as having a market value of $140,000 and two liens against it totaling $134,958. After amendment, the Tippetts claimed an exemption in the residence of $1,530. No one recorded the Tippetts' Chapter 7 petition or any notice of bankruptcy with the office of the Sacramento County Recorder.

The Trustee did not abandon the bankruptcy estate's interest in the residence, and the Tippetts continued to occupy the premises until the purported sale to Coleman. In November 2002, the Tippetts, without authorization and without disclosing their bankruptcy, listed the residence for sale through a real estate broker for $230,000. At about the same time, and without knowing of these events, the Trustee wrote to the Tippetts' attorney requesting their cooperation in marketing the residence because he believed that there might be equity available for unsecured creditors because of the general appreciation in value of real estate in the area. He sent a copy of his letter to the Tippetts. There is nothing in the record evidencing any further communication between the Tippetts and the Trustee.

In April 2003, Coleman, whom all parties agree is a bona fide purchaser without notice of the bankruptcy proceedings,[1] bought the residence for $225,000. Coleman signed a purchase money note in favor of Irwin Mortgage Corporation for $221,865, secured by a first deed of trust on the residence. The deed of trust was duly recorded. In addition, Coleman signed a second purchase money note in favor of California Rural Home Mortgage Finance Authority in the amount of $6,900. This deed of trust was also duly recorded. After $130,557.90 in pre-petition encumbrances was paid from the escrow account, the Tippetts received net proceeds of $76,582.76, exceeding both their claimed homestead exemption and any other exemption available to them.

The Trustee filed an adversary proceeding against the Tippetts, Coleman, and the lenders, seeking to recover the sale proceeds under 11 U.S.C. § 542, avoid the lenders' liens, and quiet title. The Trustee also sought to revoke the Tippetts' discharge for knowingly and fraudulently selling an asset of the estate and retaining the net proceeds under 11 U.S.C. § 727(d)(2).

The bankruptcy court bifurcated the quiet title and discharge revocation proceedings. After trial of the quiet title action on stipulated facts, the bankruptcy court held that the Tippetts' grant deed and the lenders' liens were void ab initio as violations of the automatic stay provided by 11 U.S.C. § 362. The court rejected other asserted alternatives and

---

[1]Under California's race-notice recording statute,

> [e]very conveyance of real property . . . , other than a lease for a term not exceeding one year, is void as against any subsequent purchaser or mortgagee of the same property, or any part thereof, in good faith and for a valuable consideration, whose conveyance is first duly recorded, and as against any judgment affecting the title, unless the conveyance shall have been duly recorded prior to the record of notice of action.

Cal. Civ. Code § 1214.

defenses and quieted title in the Trustee. The bankruptcy court, however, granted the lenders an equitable lien against the residence in the amount of $130,557.90 to be paid out of ultimate sale proceeds.

On appeal from the bankruptcy court's final judgment, the BAP held that the Tippetts' unauthorized transfer of the Residence to Coleman did not violate the automatic stay. The transfer therefore was not utterly void. The BAP pointed out that a Trustee can avoid unauthorized transfers by debtors under 11 U.S.C. § 549(a), but that this provision was of no use to the Trustee here because it includes a defense for bona fide purchasers. *See* § 549(c). Accordingly, the BAP reversed the bankruptcy court's judgment and remanded for entry of judgment in favor of Coleman and his lenders. The Trustee appealed.

## DISCUSSION

We review de novo a decision of the BAP. *Salazar v. McDonald (In re Salazar)*, 430 F.3d 992, 994 (9th Cir. 2005). Because the bankruptcy court tried this matter on a joint statement of undisputed facts submitted by the parties, the only disputed questions are legal. Accordingly, de novo review applies to all questions before the court. The issues for decision are: (1) whether the Tippetts' post-petition deed could convey a property interest in the residence to Coleman; (2) whether the federal Bankruptcy Code preempts the California statute protecting bona fide purchasers as applied to purchasers from a debtor in bankruptcy; and (3) whether the automatic stay voids the Tippetts' purported sale of the residence to Coleman.

### I. The Effectiveness of the Tippetts' Deed to Coleman

[1] Upon the filing of a petition in bankruptcy, all of the Tippetts' property became vested in the bankruptcy estate. *See* 11 U.S.C. § 541. From this unassailable principle, the

Trustee argues that the Tippetts' deed to Coleman has no effect because the Tippetts had no property to convey. This argument misunderstands the operation of the California bona fide purchaser statute. The design of this statute is to give effect to a conveyance when the record owner's title *is* defective because of a prior unrecorded conveyance. The statute renders an unrecorded conveyance void as to subsequent bona fide purchasers who record their title first. Cal. Civ. Code § 1214. The transfer of the Tippetts' residence to the bankruptcy estate was just such an unrecorded conveyance, and is void as to Coleman, a good faith purchaser for value who duly recorded his purchase. *See id.* There can be no question, therefore, that, if the California statute applies, the transfer to Coleman is effective, despite the absence of a property interest in the Tippetts.

[2] Our conclusion is unaffected by two cases the Trustee offers in support of his argument: *Finalco Inc. v. Roosevelt (In re Roosevelt)*, 87 F.3d 311, *as amended,* 98 F.3d 1169 (9th Cir. 1996), and *Palm v. Klapperman (In re Cady)*, 266 B.R. 172 (B.A.P. 9th Cir. 2001), *aff'd*, 315 F.3d 1121 (9th Cir. 2003). In both cases the courts determined that a debtor retained no interest in property following a particular property transfer, but the determinations were made for wholly different purposes and did not involve the validity of a transfer by a debtor to a bona fide purchaser. These cases are not inconsistent with our decision today.[2]

---

[2]In fact, the court in *Roosevelt* observed that the debtor, despite lacking an interest in property, still "retain[ed] the ability to reconvey the real estate to a bona fide purchaser, who [could] defeat the initial grantee's interest if she record[ed] before the grantee [did]." 87 F.3d at 319. We also find no impediment to our decision is presented by our cases holding that a debtor who has filed a Chapter 7 petition is stripped of standing to pursue certain causes of action. *See, e.g.*, *Sierra Switchboard Co. v. Westinghouse Elec. Corp.*, 789 F.2d 705, 707-09 (9th Cir. 1986). Much like *Roosevelt* and *Cady*, *Sierra Switchboard* and its progeny address exclusively the property interests of debtors, not the rights of third-party bona fide purchasers.

## II.  Federal Field-Preemption of California's Bona Fide Purchaser Statute

**[3]** We next consider whether the Bankruptcy Code occupies the field of title transfers initiated by Chapter 7 debtors and accordingly preempts California's statute protecting bona fide purchasers such as Coleman.[3] We conclude that it does not. In general, "[a]bsent explicit pre-emptive language, . . . field pre-emption [occurs] where the scheme of federal regulation is so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it." *Gade v. Nat'l Solid Wastes Mgmt Ass'n*, 505 U.S. 88, 98 (1992) (internal quotation marks and citation omitted). As we recently explained, "[t]here can be no doubt that federal bankruptcy law is pervasive and involves a federal interest so dominant as to preclude enforcement of state laws on the same subject"—namely, the subject of bankruptcy. *Sherwood Partners, Inc. v. Lycos, Inc.*, 394 F.3d 1198, 1201 (9th Cir. 2005) (internal quotation marks omitted). "At the same time, federal law coexists peaceably with, and often expressly incorporates, state laws regulating the rights and obligations of debtors (or their assignees) and creditors." *Id.* (citing 11 U.S.C. §§ 522(b)(2), 544(b), 543(d)(2)).

To decide whether Coleman may claim the protection of the California statute, then, we "must consider the essential goals and purposes of federal bankruptcy law, and then determine whether [Cal. Civ. Code § 1214] is consistent with them." *Id.* at 1202. Throughout this inquiry, we are mindful that "an essential state interest is at issue . . . in the security of the titles to real estate" and that, consequently, "the federal

---

[3]The Trustee argues that the federal bankruptcy scheme trumps California's laws protecting bona fide purchasers as a matter of both field and direct-conflict preemption. As the Trustee implicitly concedes, direct-conflict preemption arises in this case, if at all, from the operation of the automatic stay. Accordingly, the direct-conflict inquiry collapses into the statutory analysis of the automatic stay provision that we set forth in Section III of this opinion.

statutory purpose must be clear and manifest." *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 544 (1994) (internal quotation marks and citations omitted).

**[4]** We begin with the "essential goals and purposes of federal bankruptcy law." As we recently noted, "chapter 7 of the Bankruptcy Code . . . embodies two ideals: (1) giving the individual debtor a fresh start, by giving him a discharge of most of his debts; and (2) equitably distributing a debtor's assets among competing creditors." *Sherwood Partners, Inc.*, 394 F.3d at 1203. In addition to the general principles identified in *Sherwood*, two relevant statutory "goals and purposes" arise directly from the automatic stay provision in 11 U.S.C. § 362(a). As we have explained,

> Section 362(a) has two broad purposes. First, it provides debtors with protection against hungry creditors . . . .
>
> . . . .
>
> Second, the stay assures creditors that the debtor's other creditors are not racing to various courthouses to pursue independent remedies to drain the debtor's assets . . . .

*Dean v. Trans World Airlines, Inc.*, 72 F.3d 754, 755-56 (9th Cir. 1995) (citing H.R. Rep. No. 595, 95th Cong., 1st Sess., at 340 (1977)).

**[5]** Of these goals and purposes, the only one that conceivably can apply to the situation before us is the equitable distribution of the debtor's assets among creditors. Several considerations persuade us that California's bona fide purchaser statute is wholly consistent with this congressional goal. First, in the typical case in which the debtor "transfers" title to a bona fide purchaser through an unauthorized convey-

ance, the proceeds of the sale become part of the estate.[4] Thus, neither the total value of the assets available to the creditors through the estate nor the equity of the distribution among creditors is markedly affected.

**[6]** We are also impressed by the fact that Congress recognized and protected the interests of bona fide purchasers in a highly analogous situation. Under 11 U.S.C. § 549(a), a trustee may avoid unauthorized transfers of property of the bankruptcy estate. As the BAP pointed out, however, the same statute provides a defense to bona fide purchasers. *See* § 549(c). That is undoubtedly one reason why the Trustee here does not rely on his powers under § 549, but instead maintains that the Tippetts' transfer was void from the beginning.[5] Even though § 549 is not in issue, however, it does suggest that Congress is sufficiently comfortable with the protection of bona fide purchasers within the bankruptcy scheme that an implied preemption is not in order.

**[7]** Finally, we note that the Trustee can easily protect the estate and its creditors from unforeseen or unknown conveyances by recording the debtor's Chapter 7 petition (or a notice of bankruptcy) in the recorder's office of the counties where the debtor owned real property.[6]

---

[4]Where, as in this case, pre-petition encumbrances on the real property are paid off when escrow closes, the fairness of the distribution among the remaining creditors is unaffected: a mortgage holder would ordinarily recover dollar-for-dollar on the trustee's liquidation of the property to the extent the debt is secured. *See* 11 U.S.C. § 506(a); *St. Angelo v. Victoria Farms, Inc.*, 38 F.3d 1525, 1534-35 (9th Cir. 1994) (mortgage liens give rise to secured claims in the bankruptcy context).

[5]Because the Trustee does not rely on § 549(a) to avoid the Tippetts' transfer, the protections of bona fide purchasers provided by § 549(c) is of no use to Coleman. His title stands or falls under California law.

[6]The facts of this case are illustrative: the Trustee could have recorded a notice of the Tippetts' bankruptcy petition in Sacramento County, but simply failed to do so.

**[8]** In sum, there is no meaningful inconsistency between the federal bankruptcy scheme and California's protection of bona fide purchasers of real property. We therefore reject the Trustee's preemption argument.

### III.   Section 362 Automatic Stay and the Tippetts' Sale of the Residence

Finally, the Trustee argues that the automatic stay triggered by the Tippetts' petition rendered their deed to Coleman a nullity ab initio, which conveyed nothing to Coleman despite his status as a bona fide purchaser. Although the Trustee's argument reflects a surface plausibility, it is irreconcilable with our controlling case law and with the structure of the Bankruptcy Code.

In relevant part, the automatic stay provision states that a Chapter 7 petition "operates as a stay, applicable to all entities, of . . . any act to . . . exercise control over property of the estate." 11 U.S.C. § 362(a)(3). "[V]iolations of the automatic stay [are] void, not voidable." *Schwartz v. United States (In re Schwartz)*, 954 F.2d 569, 571 (9th Cir. 1992); *see also Gruntz v. County of Los Angeles (In re Gruntz)*, 202 F.3d 1074, 1082 (9th Cir. 2000) (en banc). From these two propositions, the Trustee argues that the Tippetts' conveyance is void because debtors must be included in "all entities" to which the automatic stay applies. We are convinced, however, that Congress intended neither the meaning, nor the result, that the Trustee urges for the automatic stay provision.

**[9]** In interpreting 11 U.S.C. § 362(a), we do not write on a clean slate. In *Schwartz*, we addressed the question whether violations of the automatic stay by creditors were void ab initio or simply voidable. 954 F.2d at 570-71. We concluded that the purpose of the provision—namely, broad protection of debtors from creditors—could be vindicated only if all violations were rendered void, not merely voidable. *Id.* at 571. As we recognized in a key passage of *Schwartz*, however, hold-

ing all violations of an automatic stay void did raise an "important potential conflict" with 11 U.S.C. § 549. *Id.* at 573. Section 549(a) provides that "the trustee may avoid a transfer of property of the estate . . . that occurs after the commencement of the case; and . . . that is not authorized under [the Bankruptcy Code] or by the court." We summarized the potential conflict as follows:

> First, the expansive definition of "transfer" [in § 549] means that sections 362 and 549, at times, cover the same transactions. Second, section 549 implies that some of these overlapping transactions will be valid unless affirmatively challenged by the trustee. Therefore, some argue that section 362 cannot be interpreted to void these overlapping transactions, for doing so would render section 549 moot.

*Schwartz*, 954 F.2d at 573 (citation omitted). We concluded, however, that the two provisions could be reconciled with each other and with our holding that transfers in violation of the automatic stay were void. We noted that "[i]n most circumstances, section 549 applies to transfers in which the debtor is a willing participant." *Id.* at 574 (citation omitted). In contrast, "*[s]ection 362's automatic stay does not apply to sales or transfers of property initiated by the debtor*. Thus, section 549 has a purpose in bankruptcy beyond the potential overlap with section 362." *Id.* (emphasis added). In a recent case, we left undisturbed this basic *Schwartz* principle—that the automatic stay provision is designed to protect the debtor against his creditors, whereas § 549(a) is designed to protect creditors against unauthorized transfers by the debtor. *See 40235 Wash. Street Corp. v. Lusardi*, 329 F.3d 1076, 1081-82 (9th Cir. 2003); *see also Value T. Sales, Inc. v. Mitchell (In re Mitchell)*, 279 B.R. 839, 843 (B.A.P. 9th Cir. 2002). Applying this principle to our case, the transfer from the Tippetts to Coleman was not rendered void by the automatic stay.

[10] The Trustee dismisses as "dictum" the principle we announced in *Schwartz* and asks us to reach the opposite con-

clusion. Basic considerations of *stare decisis* prevent us from doing so. "[W]here a panel confronts an issue germane to the eventual resolution of the case, and resolves it after reasoned consideration in a published opinion, that ruling becomes the law of the circuit, regardless of whether doing so is necessary in some strict logical sense." *United States v. Johnson*, 256 F.3d 895, 914 (9th Cir. 2001) (en banc). There is no question that the analysis and conclusion in *Schwartz* that the automatic stay did not apply to transfers by debtors was an important and focused part of the panel's reasoning; "it is clear that a majority of the panel has focused on the legal issue presented by the case." *Id.* at 916 (Kozinski, J., concurring); *see also Miranda B. v. Kitzhaber*, 328 F.3d 1181, 1186 (9th Cir. 2003) (per curiam) (quoting *Johnson*); *Miller v. Gammie*, 335 F.3d 889, 901 (9th Cir. 2003) (en banc) (Kozinski, J., concurring). Thus, that conclusion in *Schwartz* is the law of the circuit. *See Barapind v. Enomoto*, 400 F.3d 744, 750-51 (9th Cir. 2005) (en banc).

*Schwartz* therefore controls this case and requires that we reject the Trustee's contention that the automatic stay provision rendered the Tippetts' deed void. In applying *Schwartz* as controlling law, we do not mean to imply that we would decide this case otherwise in its absence. We find the reasoning of *Schwartz* persuasive, and the Trustee's attacks upon its reasoning unconvincing.

## CONCLUSION

For the foregoing reasons, the judgment of the Bankruptcy Appellate Panel of the Ninth Circuit is

**AFFIRMED.**