**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

IN THE MATTER OF: JERRY
LEE ICENHOWER, etc., et al.,
              *Debtors*,

KISMET ACQUISITION, LLC,
         *Plaintiff-Appellee*,

                v.

JERRY L. ICENHOWER;
DONNA L. ICENHOWER;
CRAIG KELLEY,
              *Defendants*,

              and

ALEJANDRO DIAZ-BARBA;
MARTHA MARGARITA BARBA
DE LA TORRE,
         *Defendants-Appellants*.

No. 10-55933

D.C. No.
3:08-cv-01446-BTM-
BLM

OPINION

Appeal from the United States District Court
for the Southern District of California
Barry T. Moskowitz, District Judge, Presiding

Argued and Submitted
February 11, 2014—Pasadena, California

Filed July 3, 2014

Before: Jerome Farris, N. Randy Smith,
and Paul J. Watford, Circuit Judges.

Opinion by Judge Farris

## SUMMARY[*]

### Bankruptcy

The panel affirmed the district court's affirmance of the bankruptcy court's judgment (1) invalidating the transfer to Alejandro Diaz-Barba and Martha Barba de la Torre (the "Diaz Defendants") of a Mexican coastal villa owned by debtors Jerry and Donna Icenhower and (2) requiring the Diaz Defendants to transfer the property to Kismet Acquisition, LLC, for the benefit of debtors' bankruptcy estate.

The debtors transferred the property to H&G, a shell company they had purchased. After the debtors filed for bankruptcy, H&G sold the property to the Diaz Defendants. The bankruptcy trustee filed a fraudulent conveyance action seeking to avoid the sale of the villa to H&G as a fraudulent pre-petition transfer. The bankruptcy trustee also filed an action seeking to avoid the sale to the Diaz Defendants on the basis that H&G was the debtors' alter ego and that the sale was an unauthorized postpetition transfer.

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel affirmed the bankruptcy court's judgment on the postpetition transfer action. It held that the Diaz Defendants had waived any objection they could have raised to the bankruptcy court's Article III authority to enter final judgment. The panel held that since the bankruptcy court's judgment for Kismet was the same in both actions, the panel's judgment rendered the fraudulent conveyance action moot.

The panel held that the bankruptcy court did not err by exercising jurisdiction over Mexican land. The panel held that the local action doctrine was preempted by statute and that 28 U.S.C. § 1334(e) granted the bankruptcy court exclusive in rem jurisdiction over the villa interest. The panel also held that the bankruptcy court did not improperly apply U.S. law extraterritorially because Congress intended extraterritorial application of the Bankruptcy Code as it applies to property of the estate. Given the bankruptcy court's ruling that H&G was the debtors' alter ego and its substantive consolidation of H&G with the bankruptcy estate, the villa interest was property of the estate as of the petition date.

The panel held that the bankruptcy court did not abuse its discretion by failing to honor the contractual selection of a Mexican forum. The bankruptcy court also did not err by declining to abstain from ordering recovery of the property based on international comity because there was no true conflict of law. The panel held that Mexico was not a necessary and indispensable party. Distinguishing *In re Tippett*, 542 F.3d 684 (9th Cir. 2008), the panel held that the bankruptcy court did not err in applying U.S. law instead of Mexican law to determine whether the Diaz Defendants were good faith purchasers. Finally, the panel held that the

bankruptcy court did not clearly err in finding that Martha Barba de la Torre purchased the villa in bad faith.

**COUNSEL**

Edward I. Silverman (argued), Sandler Lasry Laube Byer & Valdez LLP, San Diego, California, for Defendant-Appellant Alejandro Diaz-Barba.

D. Anthony Gaston (argued), San Diego, California, for Defendant-Appellant Martha Margarita Barba de la Torre.

Mathieu G. Blackston and Jeffrey Isaacs, Procopio, Cory, Hargreaves & Savitch LLP, San Diego, California; Geraldine A. Valdez, Financial Law Group, La Jolla, California, for Defendants-Appellants.

Ali M.M. Mojdehi (argued), Janet D. Gertz, Brian W. Byun, and Allison M. Rego, Cooley LLP, San Diego, California, for Plaintiff-Appellee.

**OPINION**

FARRIS, Circuit Judge:

Alejandro Diaz-Barba and Martha Barba de la Torre (collectively, the "Diaz Defendants") challenge the bankruptcy court's and district court's orders invalidating the transfer to them of a Mexican coastal villa owned by Jerry and Donna Icenhower and requiring them to convey the property to Kismet Acquisition, LLC for the benefit of Debtors' bankruptcy estate. According to the Diaz

Defendants, the bankruptcy court erred by: (1) exercising jurisdiction over Mexican land, contrary to the local action doctrine; (2) applying U.S. law extraterritorially; (3) declining to honor the forum selection clauses in the Mexican contracts effecting the property's sale; (4) declining to abstain from ordering recovery of the property based on international comity; (5) entering judgment without Mexico, allegedly a necessary and indispensable party, having been joined; (6) applying U.S. law, rather than Mexican law, to determine whether the Diaz Defendants were good faith purchasers of the property; and (7) finding that Martha Barba de la Torre purchased the property in bad faith. We affirm.

## I.

### A. Factual History

In 1995, Debtors purchased from D. Donald Lonie and the D. Donald Lonie, Jr., Family Trust their interest in Vista Hermosa, a coastal villa in Jalisco, Mexico. The interest conveyed was not fee simple, as Mexican law prohibits foreign nationals from owning title to land within 100 kilometers of the border or 50 kilometers of the coast. *See Brady v. Brown*, 51 F.3d 810, 814, 817 n.8 (9th Cir. 1995). Rather, Debtors received the beneficial interest in a *fideicomiso* trust — an arrangement wherein a Mexican bank holds title to property and a foreign national is granted the right to its use. *See id.* A *fideicomiso* trust may be created only with a permit issued by the Mexican Ministry of Foreign Affairs. *See id.*

On March 24, 2000, the Lonies sued Debtors in the Southern District of California, seeking, *inter alia*, a determination of the parties' respective rights and interests in

the Villa interest and injunctive relief. On November 24, 2003, the district court entered judgment for the Lonies, directing Debtors either to pay damages of $1,356,830.32 or to return the Villa interest.

On March 4, 2002, while the Lonies' action against them was pending, Debtors purchased H&G, a shell company created by Laughlin International, Inc. The same day, Debtors executed an agreement to transfer the Villa interest, along with another property interest, to H&G in exchange for $100,000 and H&G's assumption of $140,000 of debt. However, the bankruptcy court found "no evidence that H&G paid any of the recited consideration," and it noted that, even after the sale, Mr. Icenhower retained "absolute control over the operation of the Villa Property" and "the right to all rental income from the villa." Further, in light of H&G's lack of capitalization beyond $3,424 contributed by Debtors, and the fact that Craig Kelley, its president and sole officer and director, served in a purely titular capacity and took orders from Mr. Icenhower, the bankruptcy court concluded that "H&G had no real corporate existence apart from Mr. Icenhower" and "had no business purpose other than as a sham company to hold the Debtors' assets."

Debtors filed for bankruptcy protection on December 15, 2003. In a closing ceremony in San Diego on June 7, 2004, H&G sold the Villa interest to the Diaz Defendants for $1.5 million. Although H&G was represented by Mr. Kelley, the closing was controlled by Mr. Icenhower.

Prior to the closing, numerous red flags had arisen. First, although the Villa interest was purportedly sold by H&G, Mr. Icenhower was able to lower the purchase price to account for a debt he personally owed Mr. Diaz. Second, the Diaz

Defendants were on notice of Debtors' bankruptcy and of the possibility of litigation to avoid Debtors' transfer of the Villa interest to H&G and to tie Debtors to H&G. Third, the Villa interest was essentially H&G's only asset, but its sale was not authorized by a shareholder resolution, as required by Nevada law and H&G's Articles of Incorporation. Finally, the Diaz Defendants were instructed to pay most of the consideration to entities other than H&G, including an entity associated with Mr. Icenhower.

### B. Procedural History

In January 2004, Debtors disclosed to their creditors their March 2002 sale of the Villa interest to H&G. On August 23, 2004, the bankruptcy trustee filed an action to avoid the sale from Debtors to H&G, alleging that the sale was a fraudulent pre-petition transfer (the "fraudulent conveyance action"). On August 3, 2006, the trustee filed an action to avoid the sale from H&G to the Diaz Defendants, alleging that H&G was Debtors' alter ego and that the sale from H&G to the Diaz Defendants was an unauthorized postpetition transfer (the "postpetition transfer action"). H&G did not appear in either action. By agreement approved by the bankruptcy court on November 30, 2006, Kismet purchased the estate's assets and was substituted for the trustee in both actions.

Following a bench trial, on June 2, 2008, the bankruptcy court issued consolidated findings of fact and conclusions of law in the two actions. First, the court ruled for Kismet in the postpetition transfer action. The court found that H&G was Debtors' alter ego and substantively consolidated H&G with the bankruptcy estate, such that the Villa interest was part of the estate *nunc pro tunc* to the petition date. As such, the transfer of the interest to the Diaz Defendants was an

unauthorized postpetition transfer avoidable under § 549(a). The Diaz Defendants had no defense to avoidance under § 549(c) since they were aware of Debtors' bankruptcy prior to the closing. Further, as initial transferees of the interest, they were strictly liable under § 550(a)(1) to return the interest or its value to the estate.

Alternatively, the bankruptcy court held that Kismet was entitled to judgement on the fraudulent conveyance action. Pursuant to § 544(b)(1) and California law, Debtors' transfer of the Villa interest to H&G was avoidable as a fraudulent transfer. Under § 550(a)(2), Kismet could recover the Villa interest from the Diaz Defendants, subsequent transferees not in good faith.

The bankruptcy court ruled that, under either action, Kismet was entitled to recover "either the Villa Property or its value at the time of judgment from any combination of transferees." However, "the equities favor an order directing the return of the Villa Property where it appears Mr. Diaz conspired with Mr. Icenhower to use the clear title in Mexico to defeat the Trustee."

On the same day it issued its decision, the court issued a separate judgment. In the postpetition transfer action, the Diaz Defendants were ordered:

> [a] to take all actions necessary to execute and deliver any and all documents needed to undo the avoided transfer, and to take all actions necessary to cause the property to be reconveyed to a *fideicomiso* trust naming [Kismet] as the sole beneficiary for the benefit of the bankruptcy estate; or

> [b] alternatively, at [Kismet]'s sole option
> made upon proper noticed motion, the court
> reserves jurisdiction to enter a monetary
> judgment in favor of Kismet, and against
> Defendants, in an amount necessary to make
> the estate whole at the time of judgment.

A substantially similar order was issued in the fraudulent conveyance action. Finally, the court "reserve[d] jurisdiction to issue any and all orders necessary to carry out and enforce this judgment." On July 30, 2008, the court filed an amended consolidated judgment in which it clarified that the Villa interest was an interest in a *fideicomiso* trust, not a fee simple, and extended the deadline for compliance. The bankruptcy court's judgment was affirmed by the district court on May 21, 2010.

## II.

Our role in a bankruptcy appeal is "essentially the same" as that of the district court, *In re Caneva*, 550 F.3d 755, 760 (9th Cir. 2008) (quoting *Parker v. Cmty. First Bank*, 123 F.3d 1243, 1245 (9th Cir. 1997)), thus we "directly review the bankruptcy court's decision," *id.* We review findings of fact for clear error and conclusions of law and of mixed questions of law and fact *de novo. Banks v. Gill Distrib. Ctrs., Inc.*, 263 F.3d 862, 867 (9th Cir. 2001). Matters committed to the bankruptcy court's discretion, such as whether to abstain based on comity or to enforce a forum selection clause, are reviewed for abuse of discretion. *Vasquez v. Rackauckas*, 734 F.3d 1025, 1036 (9th Cir. 2013); *Fireman's Fund Ins. Co. v. M.V. DSR Atl.*, 131 F.3d 1336, 1338 (9th Cir. 1997).

## III.

We affirm the bankruptcy court's judgment on the postpetition transfer action. We need not decide whether the bankruptcy court had authority to enter a final judgment in the postpetition transfer action. The Diaz Defendants concede that they waived any objection they could have raised under *Stern v. Marshall*, 131 S. Ct. 2594 (2011), to the bankruptcy court's entry of final judgment. *See Exec. Benefits Ins. Agency v. Arkison*, 702 F.3d 553, 566–70 (9th Cir. 2012), *aff'd on other grounds*, 573 U.S. ___ (2014). Since the bankruptcy court's judgment for Kismet was the same in both actions, our judgment here renders the fraudulent conveyance action moot. *See Dhangu v. I.N.S.*, 812 F.2d 455, 459–60 (9th Cir. 1987) (citing 13A C. Wright, A. Miller, E. Cooper, *Federal Practice & Procedure* § 3533.2 at 241–45 (1984)).

## A.

We begin with the local action doctrine, a federal common law rule barring district courts from exercising jurisdiction over actions directly affecting land in a different state. *See United States v. Byrne*, 291 F.3d 1056, 1060 (9th Cir. 2002).

In the context of a postpetition transfer action, this rule is preempted by statute. *See City of Milwaukee v. Illinois & Michigan*, 451 U.S. 304, 313 (1981). Specifically, 28 U.S.C. § 1334(e) grants the bankruptcy court "exclusive jurisdiction — (1) of all the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate." 28 U.S.C. § 1334(e); *see also In re Simon*, 153 F.3d 991, 996 (9th Cir. 1998). Property of the estate includes "all

legal or equitable interests of the debtor in property as of the commencement of the case," "wherever located and by whomever held." 11 U.S.C. § 541(a). Here, on the petition date, the Villa interest was held by H&G. But the bankruptcy court ruled that H&G was Debtors' alter ego and substantively consolidated H&G with the bankruptcy estate *nunc pro tunc* to the petition date. The Diaz Defendants have not demonstrated that this ruling should be overturned. Thus, the Villa interest was property of the estate as of the petition date. Notwithstanding the local action doctrine, 28 U.S.C. § 1334(e) granted the bankruptcy court exclusive *in rem* jurisdiction over the Villa interest.

**B.**

We next address the Diaz Defendants' argument that the bankruptcy court improperly applied U.S. law extraterritorially. In *Morrison v. National Australia Bank Ltd.*, 130 S. Ct. 2869 (2010), the Supreme Court established a two-part test for deciding extraterritoriality questions. First, unless Congress clearly expressed its intent to apply a statute extraterritorially, a court "must presume [the statute] is primarily concerned with domestic conditions." *Id.* at 2877 (quoting *E.E.O.C. v. Arabian Am. Oil Co.* (*"Aramco"*), 499 U.S. 244, 248 (1991)). Second, if a statute applies only domestically, the question becomes: which domestic acts "are the objects of the statute's solicitude"? *Id.* at 2884. Which domestic acts does "the statute seek[] to 'regulate'"? *Id.* Not merely any contact by a defendant with the United States is sufficient; rather, the defendants' domestic conduct must implicate "the 'focus' of congressional concern." *Id.* (quoting *Aramco*, 499 U.S. at 255).

In the postpetition transfer action, the bankruptcy court's order was proper. "Congress intended extraterritorial application of the Bankruptcy Code as it applies to property of the estate." *In re Simon*, 153 F.3d 991, 996 (9th Cir. 1998); *see also* 28 U.S.C. § 1334(e). Here, given the court's ruling that H&G was Debtors' alter ego and its substantive consolidation of H&G with the bankruptcy estate, the Villa interest was property of the estate as of the petition date.

## C.

We turn now to the Diaz Defendants' argument that the bankruptcy court abused its discretion by failing to honor the contractual selection of a Mexican forum. The transfers of the Villa interest from the Lonie family to Debtors and from Debtors to H&G, and the transfer of title from the bank to the Diaz Defendants, were formalized through *escrituras*, or Mexican contracts. Each *escritura* contained a clause selecting a Mexican forum for resolving disputes related to the "interpretation" of or "compliance" with the agreement.

A court may decline to enforce a forum selection clause if, *inter alia*, "'enforcement would contravene a strong public policy of the forum in which suit is brought.'" *Petersen v. Boeing Co.*, 715 F.3d 276, 280 (9th Cir. 2013) (quoting *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1140 (9th Cir. 2003)). One of the Bankruptcy Code's primary objectives is "centralization of disputes concerning a debtor's legal obligations." *In re Eber*, 687 F.3d 1123, 1131 (9th Cir. 2012); *see also In re Rader*, 488 B.R. 406, 416 (B.A.P. 9th Cir. 2013). Thus, courts in which a bankruptcy proceeding is pending have declined to honor contractual selections of other forums where the matters at issue constitute core proceedings and are not inextricably intertwined with non-core

proceedings. *See, e.g.*, *In re Iridium Operating LLC*, 285 B.R. 822, 836–37 (S.D.N.Y. 2002) (citing cases). Here, both actions are core proceedings and are not inextricably intertwined with non-core proceedings. *See* 28 U.S.C. § 157(b)(2); *In re Jones*, Nos. CC–06–1105–MoBK, CC–06–1106–MoBK, 2006 WL 6810992, at *3–*4 (B.A.P. 9th Cir. Dec. 6, 2006). The bankruptcy court properly declined to enforce the forum selection clauses.

## D.

We next consider comity, a doctrine which effectuates "the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation." *In re Simon*, 153 F.3d 991, 998 (9th Cir. 1998) (quoting *Hilton v. Guyot*, 159 U.S. 113, 163–64 (1895)). The doctrine applies only if there is "a true conflict" between domestic and foreign law, *id.* at 999 (quoting *Hartford Fire Ins. Co. v. California*, 509 U.S. 764, 798 (1993)), which there is not if "a person subject to regulation by two states can comply with the laws of both." *Hartford*, 509 U.S. at 799 (quoting *Restatement (Third) of Foreign Relations Law* § 403, Comment *e*).

Here, there is no true conflict. Mexican law permitted the Diaz Defendants to convey the Villa interest to Kismet. *See Brady v. Brown*, 51 F.3d 810, 815, 819 (9th Cir. 1995) (holding that a district court order requiring defendants "to execute irrevocable powers of attorney to an agent to transfer the [Mexican property at issue] into a Mexican government-approved trust, or 'fideicomiso,' for the benefit of [plaintiffs]" "did not violate Mexican law"). Further, although the bankruptcy court ordered the *Diaz Defendants* "to take all actions necessary" to create a *fideicomiso* trust, it

did not require the Mexican government to approve the trust or to recognize or enforce its judgment. Thus, there is no true conflict, and comity is not implicated.

**E.**

We turn now to the Diaz Defendants' argument that the bankruptcy court's order should be vacated since Mexico is a necessary and indispensable party, yet is immune from suit as a sovereign nation. Under Rule 19(a) of the Federal Rules of Civil Procedure, a party is necessary if:

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>
> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a).

Here, Mexico is not a necessary party. First, the bankruptcy court was capable of awarding complete relief in Mexico's absence. If the Mexican government was amenable

to the *fideicomiso*, the Diaz Defendants' compliance with the judgment would have led to the trust being created. If the government was not amenable, the bankruptcy court could have issued a further order, pursuant to its reservation of jurisdiction "to issue any and all orders necessary to carry out and enforce [its] judgment," requiring the Diaz Defendants to pay Kismet the value of the Villa interest. *See* 11 U.S.C. § 550. Second, even if Mexico has a cognizable interest in who owns coastal real property, the bankruptcy court's order did not impede Mexico's ability to protect this interest. Rather, the court crafted a remedy consistent with Mexico's *fideicomiso* system. Further, the court did not require Mexico to approve the *fideicomiso* trust that the Diaz Defendants were ordered to create. Finally, the Diaz Defendants have not identified any sense in which the court's order left them at risk of incurring multiple or inconsistent obligations.

## F.

We next consider the Diaz Defendants' argument that the bankruptcy court erred in applying U.S. law instead of Mexican law to determine whether they were good faith purchasers. Although this argument relies exclusively on *In re Tippett*, 542 F.3d 684 (9th Cir. 2008), that case is distinguishable.

In *Tippett*, the debtors sold their California home after filing their bankruptcy petition. *Id.* at 687. Although the parties agreed that, under California law, the buyer was a bona fide purchaser, *id.* at 686, the trustee argued that "the Bankruptcy Code occupies the field of title transfers initiated by Chapter 7 debtors and accordingly preempts California's statute protecting bona fide purchasers such as [the buyer]." *Id.* at 689. This argument was rejected. *Id.* With the

preemption issue settled, there was apparently no dispute that California law applied to determine whether the buyer was a bona fide purchaser.

Here, unlike in *Tippett*, the parties do not agree that, absent preemption, Mexican law determines whether the Diaz Defendants purchased the Villa in good faith. Rather, Kismet argues that the bankruptcy court properly applied U.S. law, specifically 11 U.S.C. §§ 549(c) and 550(b). This position is at least colorable, as H&G's sale of the Villa interest to the Diaz Defendants closed in San Diego. Thus, *Tippett* does not establish that Mexican law determines whether the Diaz Defendants were good faith purchasers. Citing no other authority, the Diaz Defendants have failed to show that the bankruptcy court erred.

## G.

Finally, we address the Diaz Defendants' argument that, since Martha Barba de la Torre was insulated from the interactions and due diligence leading up to her purchase of the Villa, the bankruptcy court clearly erred in finding that she purchased the Villa in bad faith. This argument fails. A party "is considered to have 'notice of all facts, notice of which can be charged upon [her] attorney.'" *Garcia v. I.N.S.*, 222 F.3d 1208, 1209 (9th Cir. 2000) (per curiam) (quoting *Link v. Wabash R.R.*, 370 U.S. 626, 634 (1962)). Here, the bankruptcy court found that Martha "relied on her son and their attorney to handle all aspects of the transaction for her." The attorney had notice of numerous red flags surrounding the sale, thus Martha is charged with notice of those red flags. This conclusion is not disturbed by the "equal dignities rule," which mandates that "an authority to enter into a contract required by law to be in writing can only be given by

an instrument in writing." Cal. Civ. Code § 2309. The imputation of notice to Martha is based, not on her attorney's execution of a contract on her behalf, but rather on her attorney's investigation leading up to the sale of the Villa interest. Even beyond the attorney-client relationship, moreover, Martha would have had personal knowledge of the red flags if she had exercised reasonable diligence. *See In re Richmond Produce Co.*, 195 B.R. 455, 464 (N.D. Cal. 1996) (citing *Bonded Fin. Servs., Inc. v. European Am. Bank*, 838 F.2d 890, 897–98 (7th Cir. 1988)).

Finally, the Diaz Defendants' argument that Martha never received the beneficial interest from H&G, but rather received only title from the bank, is unconvincing. As a court of equity, the bankruptcy court properly looked past the formalities of Mexican law to recognize the reality that each of the Diaz Defendants received the Villa interest from H&G.

We **AFFIRM** the bankruptcy court's judgment with respect to the postpetition transfer action. The fraudulent conveyance action is moot as a result. We grant the requests for judicial notice filed by Kismet and the Diaz Defendants.