In re Lehua HOOPAI, Debtor.

Lehua Hoopai, Appellant,

v.

Countrywide Home Loans, Inc.; James Pelosi, Co–Trustee of The Maluhia Trust; Marcelle Loren, Co–Trustee of the Maluhia Trust, Appellees.

BAP No. HI–06–1328–KMoB.
Bankruptcy No. 04–02511.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Jan. 19, 2007.

Filed March 28, 2007.

Lissa D. Shults, Bradley R. Tamm, Shults & Tamm, LLP, Honolulu, HI, for Appellant.

Steven T. Iwamura, Stanton, Clay, Chapman & Iwamura, Tina L. Coleman, Alston, Hunt, Floyd & Ing, Honolulu, HI, for Appellees.

Before: KLEIN, MONTALI and BRANDT, Bankruptcy Judges.

## OPINION

KLEIN, Bankruptcy Judge.

The court approved the chapter 13 debtor's $300,000 sale of property on which she owed $158,935, but closing was delayed for a year by an appeal designed to revive the creditor's incomplete $159,000 prepetition foreclosure sale and by the attorneys' fees dispute that is the subject of this appeal. The court ruled, *In re Hoopai*, 348 B.R. 528 (Bankr.D.Haw.2006), that the mortgagee was "prevailing party" under Hawaii law and awarded all the mortgagee's requested fees and costs ($83,542.87), in addition to the $176,927.72 that had been paid to extinguish the debt at closing. It correlatively rejected the debtor's request for fees and exonerated the foreclosure purchaser's supersedeas bond.

We hold that the debtor was "prevailing party" in all post-bankruptcy litigation and VACATE and REMAND because this conclusion materially alters the situation and potentially exposes the mortgagee to a fee award in light of the Supreme Court's decision in *Travelers Cas. & Sur. Co. v. Pac. Gas & Elec. Co.,* — U.S. —, 127

S.Ct. 1199, 167 L.Ed.2d 178 (2007) ("*Travelers*"), *overruling Fobian v. W. Farm Credit Bank (In re Fobian)*, 951 F.2d 1149, 1153 (9th Cir.1991).

## FACTS

Appellee Countrywide Home Loans held two mortgages on real property owned by appellant Lehua Hoopai in Hawaii, on which a total of $158,935 was owed as of October 15, 2004, when it auctioned the property to the appellee trustees of Maluhia Trust ("Maluhia") for $159,000. The nonjudicial foreclosure auction had been rescheduled from April 23, 2004, because Hoopai filed a pro se chapter 11 case that day, which case had procedural difficulties and was voluntarily dismissed on September 8, 2004.

Hoopai, who had contracted on September 21, 2004, to sell the property for $300,000, filed a chapter 13 case on October 18, 2004, before title on the $159,000 foreclosure passed to Maluhia.

Countrywide, joined by Maluhia, filed a motion for relief from the automatic stay in order to complete the foreclosure transfer. On January 12, 2005, the court denied the Countrywide–Maluhia motion, rejecting the argument that the auction extinguished the debtor's interest and holding that the residence was property of the estate. Maluhia appealed.

On January 24, 2005, the court granted the debtor's motion to sell the property for $300,000 to her prior purchaser over Maluhia's opposition. Maluhia appealed.

The chapter 13 plan was confirmed over Countrywide's objection on February 23, 2005.

The court granted Maluhia's motion for stay pending appeal of the stay relief and sale orders, with a supersedeas bond of $335,000. It ordered the debtor to pay insurance, property taxes and assessments and ordered the debtor's purchaser (already in possession) to pay $1,250 per month rent into a rent trust fund from which only insurance, taxes, and assessments could be paid.

The district court affirmed the stay relief and sale orders in October 2005, but a dispute with Countrywide led the debtor to file a second sale motion, which was granted on terms that required attorneys' fees be held in escrow.

Although Countrywide did not participate in Maluhia's appeal and purportedly merely "monitored" the proceedings (348 B.R. at 535 n. 3), its fee demand rose from the $36,143.31 in its proof of claim on February 7, 2005, to $57,211.14 as of December 31, 2005, and, with costs, ultimately rose to $83,542.87.

The sale closed on January 31, 2006, whereupon Countrywide was paid $176,927.72, representing principal, interest, late charges, trust fund shortages, and miscellaneous charges other than the attorneys's fees and costs to be held in escrow.

The instant appeal is from the order resolving the debtor's motion seeking determinations that: (1) Countrywide's attorneys' fees were excessive; (2) the debtor recover her attorneys' fees either from Countrywide or Maluhia; (3) the debtor recover from the Maluhia supersedeas bond mortgage interest, real property taxes, insurance premiums, and repair and trust account expenses accrued during the appeal, and any attorneys' fees that the court awarded to Countrywide; and (4) the trust account funds either be paid to the debtor or to the chapter 13 trustee to fund her plan. Countrywide and Maluhia opposed the debtor's motion.

The court ordered that: (1) Countrywide recover from the sale escrow all its claimed $83,542.87 in attorneys' fees and

costs; (2) the debtor recover from the rent trust fund the mortgage interest, property taxes, insurance premiums, and repair expenses incurred during Maluhia's appeal, plus expenses of the rent trust fund; and (3) that there be no recovery against the supersedeas bond.

This timely appeal ensued.

## JURISDICTION

The bankruptcy court had jurisdiction via 28 U.S.C. § 1334. We have jurisdiction over the final order per 28 U.S.C. § 158(a).

## ISSUES

(1) Whether the court correctly concluded that Countrywide was the "prevailing party" for purposes of Hawaii law.

(2) Whether the amount of the fee award was excessive.

(3) Whether the court correctly refused to shift payment of Countrywide's attorneys' fees from the debtor to Maluhia.

(4) Whether the court correctly exonerated Maluhia's supersedeas bond.

## STANDARD OF REVIEW

■■■ We review findings of fact for clear error and issues of law *de novo. Litton Loan Serv'g, LP v. Garvida (In re Garvida)*, 347 B.R. 697, 703 (9th Cir. BAP 2006). Clear error exists when, on the entire evidence, the reviewing court is left with the definite and firm conviction that a mistake has been committed. *Easley v. Cromartie*, 532 U.S. 234, 242, 121 S.Ct. 1452, 149 L.Ed.2d 430 (2001); *Lentini v. Cal. Ctr. for the Arts, Escondido*, 370 F.3d 837, 843 (9th Cir.2004).

## DISCUSSION

Although we are presented with a number of issues, the linchpin of this appeal is the bankruptcy court's determination that Countrywide is "prevailing party" in the manner that qualifies under Hawaii law for honoring the attorneys' fees provisions in the underlying notes.

## I

The bankruptcy court ruled that the fee award to Countrywide is subject to Haw. Rev.Stat. § 607–14, and the parties agree that this statute is applicable to this appeal.

The basic "prevailing party" analysis is straightforward. The $300,000 sale price exceeded the Countrywide debt of less than $176,927.72 at the time of closing, which makes Countrywide an "oversecured" creditor. The Bankruptcy Code provides that an oversecured creditor is entitled to "reasonable fees, costs, or charges provided for under the agreement under which such claim arose." 11 U.S.C. § 506(b) (2000). The bankruptcy court ruled, correctly, that § 506(b) does not operate to create a right of attorneys' fees that does not already exist and, accordingly, focused on the underlying agreements that are governed by Hawaii law. *Hoopai*, 348 B.R. at 535. This comports with the result in *Travelers*, even though the Supreme Court declined to consider the implications of § 506(b). *Travelers*, 127 S.Ct. at 1206–1208.[1]

Countrywide's notes and mortgages provided that, after default, "Lender may require Borrower to pay costs and expenses including reasonable and customary attorney's fees for enforcing this Note *to the extent not prohibited by applicable law*"

---

1. In light of *Travelers*, we need not decide whether § 506(b) is essential to a fee award. Countrywide's oversecured status triggers § 506(b), independent of the *Travelers* analysis.

and that if there is "a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy . . .), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property. . . ." *Hoopai,* 348 B.R. at 533–34 (emphasis supplied).

The final link is the Hawaii statute, Haw.Rev.Stat. § 607–14, that regulates contractual attorney's fee provisions:

> In all the courts, in all actions in the nature of assumpsit and in all actions on a promissory note or other contract in writing that provides for an attorney's fee, there shall be taxed as attorneys' fees, to be paid by the losing party and to be included in the sum for which execution may issue, a fee that the court determines to be *reasonable;* provided that the attorney representing the *prevailing party* shall submit to the court an affidavit stating the amount of time the attorney spent on the action and the amount of time the attorney is likely to spend to obtain a final written judgment, or, if the fee is not based on an hourly rate, the amount of the agreed upon fee. The court shall then tax attorneys' fees, which the court determines to be reasonable, to be paid by the losing party; provided that *this amount shall not exceed twenty-five per cent of the judgment.*

Haw.Rev.Stat. § 607–14 (emphasis supplied).

■ Under this statutory regime, contractual fee provisions are automatically a loser-pays two-way street, are limited to those fees that are determined by the court to be reasonable, and cannot exceed 25 percent of the amount in controversy.

The key requirement, then, is that Countrywide must have been the "prevailing party" for purposes of Haw.Rev.Stat. § 607–14 in order to qualify for any fees.

■ As the bankruptcy court noted, identifying the prevailing party under Hawaii law can be complex. What is required is that the party have prevailed on the "disputed main issue" and not necessarily on all issues. *Food Pantry, Ltd. v. Waikiki Bus. Plaza, Inc.,* 58 Haw. 606, 575 P.2d 869, 879 (1978); *Hoopai,* 348 B.R. at 534. The court identifies the principal issues raised by the pleadings and proof and then determines, "on balance, which party prevailed on the issues." *Village Park Cmty. Ass'n v. Nishimura,* 108 Hawai'i 487, 122 P.3d 267, 283 (Haw.Ct.App.2005) (citation omitted); *Hoopai,* 348 B.R. at 534.

■ Applying this analysis, the bankruptcy court ruled that, as between Countrywide and Hoopai, the "disputed main issue" was "enforcement of Countrywide's liens and payment of Countrywide's secured claim" and that the issues on which Countrywide litigated and lost in the bankruptcy court were "subsidiary" to lien enforcement and payment. *Hoopai,* 348 B.R. at 535. We are persuaded with a definite and firm conviction that this determination was, to the extent it is a factual finding, clearly erroneous insofar as it relates to the period beginning with the filing of the bankruptcy case on October 18, 2004.

Neither the validity of Countrywide's liens nor the prospect for full payment were ever in question in the bankruptcy case in light of the substantial equity cushion.

Countrywide was involved in three substantive disputes (other than the present fee dispute) in the bankruptcy case. First, Countrywide contended that its non-judicial foreclosure auction on October 15, 2004, operated to extinguish Hoopai's interest in the property such that the prop-

erty was not property of the estate. The court ruled to the contrary. Second, Countrywide contended that there was cause to grant relief from the automatic stay. The court denied the motion. Third, after the court had approved the sale by Hoopai for $300,000, which would pay Countrywide's mortgages in full through escrow, Countrywide opposed confirmation of Hoopai's chapter 13 plan. The plan was confirmed over Countrywide's objection. In addition, it was not necessary to devote $20,000 of time to "monitor" and "confer with" counsel in the Maluhia appeal in which the district court affirmed the bankruptcy court's orders. In sum, the "disputed main issue" surrounding all disputes between Hoopai and Countrywide during the chapter 13 case was whether Hoopai would be allowed to complete her $300,000 sale. She plainly was the prevailing party.

Nor can it be said that full payment of the liens was seriously in doubt. Since the $300,000 sale had already been agreed upon before the outset of the case and was approved relatively promptly, Countrywide could have been paid in full promptly if it had not formed an alliance with Maluhia to try to force through the $159,000 auction sale and had not thereafter opposed the confirmation of Hoopai's chapter 13 plan. It always stood to be paid in full and was paid all interest and charges that accrued in the interval between the filing of the bankruptcy case and the closing on January 31, 2006, at which time it received $176,927.72. Moreover, to the extent there was delay, responsibility must be shared by Countrywide which could have been paid a year earlier if it had not tried

to force the completion of its $159,000 auction sale to Maluhia.

In addition, the reasonableness of Countrywide's fees is also open to question. The analysis here implicates both Hawaii law and federal law because Haw.Rev.Stat. § 607–14 imposes a "reasonable" requirement, as does Bankruptcy Code § 506(b).[2] Although Countrywide asserts that it merely "monitored" the Maluhia appeal of the $300,000 sale, the assertion is belied by the $21,067.83 difference between the Countrywide fee request of $36,143.31 in its February 7, 2005, proof of claim and its December 31, 2005, request of $57,211.14 (and by its final request of $83,542.87). Mere monitoring for less than a year does not reasonably cost $21,067.83 in professional fees.

## II

Our conclusion that Countrywide was not the "prevailing party" for purposes of Haw.Rev.Stat. § 607–14 with respect to what occurred during the bankruptcy case requires that the order on appeal be vacated and remanded for further consideration. This so materially changes the overall equation that it is not necessary, and perhaps counterproductive, to determine the other fact-specific issues that have been presented by the appellant. Since the Supreme Court in *Travelers* overruled the Ninth Circuit's *Fobian* rule and made clear that contract-based fees incurred in the course of litigating issues of federal bankruptcy law may be awarded pursuant to state law, Hoopai's request for fees under Haw.Rev.Stat. § 607–14 will need to be revisited.

2. In light of the disposition of this appeal, we need not, and do not, express views about whether there are any material differences between what is "reasonable" for purposes of Haw.Rev.Stat. § 607–14 and what is "reason-able" for purposes of Bankruptcy Code § 506(b) or whether, in the wake of *Travelers*, the result would differ if Countrywide were to be undersecured.

512

On remand, the court might determine that Hoopai is entitled to her reasonable fees as "prevailing party," or it may decide that no fees are reasonable for purposes of the statute and in light of the circumstances of the case and the history of the prior relationship between Hoopai and Countrywide.[3] Moreover, the outcome of that analysis may cause the court to take a different view of whether the Maluhia supersedeas bond should be exonerated. We do not wish to constrain its latitude to deal with matters we have not decided.

## CONCLUSION

For the foregoing reasons, we hold that Hoopai was "prevailing party" under Hawaii law with respect to events commencing October 18, 2004, and, accordingly, VACATE and REMAND for further proceedings consistent with this decision.

**3.** We also note that the record is opaque about how more than 25 percent of $176,927.72 (i.e. $44,231.93) could have been awarded in light of the 25 percent limit imposed by Haw.Rev.Stat. § 607–14.