FILED

NOT FOR PUBLICATION

JUL 23 2014

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

# UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP Nos. CC-13-1303-DKiTa |
| | CC-13-1426-DKiTa |
| IDA MANASARYAN, | |
| | Bk. No. 12-17095-MT |
| Debtor. | |

SERGEY KORCHINSKY,

      Appellant,

v.

SKYLINE VISTA EQUITIES, LLC;
BANK OF AMERICA, N.A.; IDA
MANASARYAN; CORI B. JONES,

      Appellees.

| | |
|---|---|
| In re: | BAP No. CC-13-1411-DKiTa |
| SERGEY KORCHINSKY, | Bk. No. 12-17169-AA |
| Debtor. | |

SERGEY KORCHINSKY,

      Appellant,

v.

SKYLINE VISTA EQUITIES, LLC;
BANK OF AMERICA, N.A.;
CORI B. JONES,

      Appellees.

| | |
|---|---|
| In re: | BAP No. CC-13-1427-DKiTa |
| RUZANNA MANASARYAN, | Bk. No. 12-13444-MT |
| Debtor. | |

SERGEY KORCHINSKY,

                    Appellant,

v.                                    **M E M O R A N D U M**[1]

SKYLINE VISTA EQUITIES, LLC;
BANK OF AMERICA, N.A.;
CORI B. JONES,

                    Appellees.
_____

Argued and Submitted on June 26, 2014
at Pasadena, California

Filed - July 23, 2014

Appeals from the United States Bankruptcy Court
for the Central District of California

Honorable Maureen A. Tighe and Honorable Alan M. Ahart,
Bankruptcy Judges, Presiding

Appearances:    Mohammad Azhar Asadi, of Law Offices of M. Azhar
                Asadi & Associates APC, argued for Appellant
                Sergey Korchinsky;  Leslie M. Werlin argued for
                Appellees Bank of America, N.A. and ReconTrust
                Company, N.A.; William Fitch argued for Appellee
                Skyline Vista Equities, LLC.

Before:  DUNN, KIRSCHER, and TAYLOR, Bankruptcy Judges.

Facing a foreclosure sale of real property he owned, Appellant filed a bankruptcy case in the name of an alias; failed to inform the secured creditor of his pending bankruptcy case; and transferred, postpetition, fractional interests in the real property to two other individuals with pending bankruptcy cases.  After the foreclosure sale took place, the secured creditor was notified of the bankruptcy of one of the transferees

---

[1] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

-2-

of an interest in the real property. The purchaser at the foreclosure sale sought and obtained in that bankruptcy case an in rem order granting relief from the automatic stay as to any and all bankruptcy cases pending that involved the real property.

Appellant thereafter asserted in state court proceedings that the foreclosure sale was void, having been conducted in violation of the automatic stay in his bankruptcy case. The Appellant filed a motion to reopen the bankruptcy case in which the in rem order had been entered in order to seek relief from the order. When the bankruptcy court denied the motion to reopen, Appellant filed the first appeal.

The secured creditor then filed a motion for relief from the automatic stay in the bankruptcy case of the Appellant and each individual allegedly holding an interest in the real property based upon Appellant's postpetition transfers. The bankruptcy court granted in rem relief in all cases, and annulled the automatic stay in each case. Appellant appealed all three of those orders.

For the reasons stated in this Memorandum, we AFFIRM in all four appeals.

## I.  FACTUAL BACKGROUND

On October 24, 2005, Sergey Korchinsky ("Sergey") obtained a loan in the amount of $920,000, evidenced by a promissory note ("Note") secured by a deed of trust ("Trust Deed") on real property ("Property") in Granada Hills, California. Countrywide Home Loans, Inc. ("Countrywide") was the lender. On September 16, 2011, Countrywide assigned the Trust Deed to The Bank of New York Mellon fka The Bank of New York, as Trustee for

-3-

the Certificateholders of CWALT, Inc., Alternative Loan Trust 2005-71, Mortgage Pass-Through Certificates, Series 2005-71. The assignment was recorded on October 13, 2011. ReconTrust Company, N.A. ("ReconTrust"), was the trustee under the Trust Deed, and Bank of America, N.A. ("BofA") (hereinafter, ReconTrust and BofA are collectively referred to as the "Bank") is the servicer on the Note.

Beginning in August 2008, Sergey defaulted on the Note. On February 17, 2012, the Bank served a notice of default, recorded on February 22, 2012, advising that Sergey was $262,346.06 in default and that the Bank had elected to sell the Property if the default was not cured. On July 23, 2012, the Bank served a notice of sale, recorded on July 25, 2012, stating that the Bank intended to conduct an auction ("Trustee's Sale") of the Property on August 17, 2012.

The Trustee's Sale was held as scheduled on August 17, 2012, at which time the Property was sold to Skyline Vista Equities, LLC ("Skyline"). The Trustee's Deed Upon Sale was recorded on September 4, 2012.

The Tale of Three Bankruptcy Cases: A Pattern is Established[2]

The notice of the Trustee's Sale set off a series of events

---

[2] We exercised our discretion to review the bankruptcy court's electronic docket and pleadings on record therein for the three bankruptcy cases included in the factual discussion below. See O'Rourke v. Seaboard Sur. Co. (In re E.R. Fegert, Inc.), 887 F.2d 955, 957-58 (9th Cir. 1989); Atwood v. Chase Manhattan Mortg. Co. (In re Atwood), 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

-4-

which culminated in the orders currently on appeal.

Sergey filed a chapter 13[3] bankruptcy petition ("Sergey Bankruptcy Case") on August 9, 2012. Notably, the petition was in the name of Sergey Sahakyan. Only the petition was filed. The mailing matrix included two creditors: BAC Home Loans Servicing, LP with a post office box address, and "DWP," also with a post office box address. Neither address included an individual officer or agent. Sergey used an address other than the Property address as his mailing address for purposes of the Sergey Bankruptcy Case.

On August 9, 2012, the Bankruptcy Clerk entered an order directing Sergey to file, inter alia, his bankruptcy schedules, Statement of Financial Affairs, and Chapter 13 Plan (collectively, "Bankruptcy Documents") not later than August 23, 2012. Sergey filed his Bankruptcy Documents on August 22, 2012, but they were completely devoid of any information. All provisions either were marked "N/A" or left blank entirely.

On August 16, 2012, postpetition, a grant deed ("Grant Deed") was executed[4] with respect to the Property which purported to transfer a fractional interest in the Property from Sergey to

---

[3] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037. The local rules of the Bankruptcy Court for the Central District of California are referred to as "LBRs." The Federal Rules of Civil Procedure are referred to as "Civil Rules."

[4] The use of the passive voice to describe this act is intentional in light of Sergey's later assertions that the Grant Deed is a forgery.

Sergey, Ida Manasaryan ("Ida"), and Ruzanna Manasaryan ("Ruzanna"). The Grant Deed was recorded on August 17, 2012, the date set for the Trustee's Sale.

At the time the Grant Deed was executed and recorded, Ruzanna was a debtor in a pending chapter 7 case ("Ruzanna Bankruptcy Case"). The Ruzanna Bankruptcy Case had been filed as a chapter 13 case on April 12, 2012, but was converted to chapter 7 on May 2, 2012, on Ruzanna's motion. In her Bankruptcy Documents filed on May 12, 2012, Ruzanna listed only real property located on Cumpston Street in Los Angeles ("Ruzanna Residence").[5]

The Ruzanna Bankruptcy Case ultimately was dismissed on November 26, 2012, after Ruzanna repeatedly failed to appear at her § 341(a) Meeting of Creditors. Although Ruzanna amended her Bankruptcy Documents on August 10, 2012, she never added the Property as an asset in which she claimed an interest.

At the time the Grant Deed was executed and recorded, Ida also was a debtor in a pending chapter 7 case ("Ida Bankruptcy

---

[5] On June 27, 2012, Ruzanna filed a motion to vacate an order granting relief from the automatic stay as to the Ruzanna Residence that had been entered in the alleged unrelated chapter 13 case of Federico J. Tribel. In her motion to vacate, Ruzanna stated that unknown to her, and by use of her forged signature, a portion of the Ruzanna Residence had been deeded to Mr. Tribel. The lender ("Ruzanna Lender") on the Ruzanna Residence had obtained an in rem order ("Ruzanna In Rem Order") granting relief from the automatic stay as to the Ruzanna Residence. The Ruzanna Lender thereafter noticed a new foreclosure sale for April 12, 2012. Ruzanna purportedly learned of the Ruzanna In Rem Order after the purchaser at the public auction of the Ruzanna Residence initiated an unlawful detainer action against Ruzanna in state court.

Case"). The Ida Bankrupcy Case had been filed as a chapter 13 case on August 7, 2012. Similar to Mr. Korchinsky, Ida filed only the petition on that date. Her mailing matrix included the identical creditors as did Mr. Korchinsky's: BAC Home Loans Servicing, LP with a post office box address, and "DWP," also with a post office box address. Neither address included an individual officer or agent. Ida ultimately filed her Bankruptcy Documents on August 22, 2012, but they also were completely devoid of any information. All provisions either were marked "N/A" or left blank entirely. Ida listed no interest in real property in her schedules.[6]

On September 10, 2012, the United States Trustee ("UST") filed a motion to dismiss the Ida Bankruptcy Case for abuse. The UST Motion asserted that the Ida Bankruptcy Case had not been filed for any legitimate purpose. The UST cited to the grant deed transferring the Granada Hills Property to Ida for the apparent purpose of stopping foreclosure proceedings. The UST cited to yet another grant deed transferring real property from

---

[6] A relief from stay motion ("Wilshire Motion") was brought by Wilshire Finance Partners, Inc. ("Wilshire") alleging that on August 3, 2012, shortly before Wilshire's August 9, 2012 scheduled foreclosure sale on real property in Granada Hills, California ("Granada Hills Property"), and four days before the Ida Bankruptcy Case was filed, a grant deed was recorded transferring the Granada Hills Property from Wilshire's borrower, Geghetsik Nersisyan, to Ida. Ida responded to the Wilshire Motion, asserting that she had more than 35% equity in the Granada Hills Property. To her response she attached "Sale Escrow Instructions" dated August 2, 2012, reflecting a proposed sale from Geghetsik Nersisyan to a third party buyer, Hovhannes Yesayan.

Maria Trinidad Figueroa to Ms. Figueroa and Ida as joint tenants, also in an apparent effort to stop a pending foreclosure sale of Ms. Figueroa's property. Following a hearing on the UST's motion, on October 18, 2012, the bankruptcy court entered an order dismissing the Ida Bankruptcy Case with a one year bar to refiling.

The Property, Foreclosure Proceedings, and Annulment of the Automatic Stay

Although Sergey filed the Sergey Bankruptcy Case on August 9, 2012, he did not notify the Bank of the pending case.[7] The Trustee's Sale of the Property was held as scheduled on August 17, 2012, and the Property was sold to Skyline.[8] A Trustee's Deed Upon Sale was recorded in due course on September 4, 2012.

On September 26, 2012, Skyline filed a motion for relief from stay ("Skyline Motion") in the Ida Bankruptcy Case, alleging it was entitled to relief pursuant to § 362(d)(1) based on Ida's bad faith and pursuant to § 362(d)(4) on the basis that the filing was part of a scheme to hinder, delay or defraud creditors.

Sergey was served with the Skyline Motion at the Property address and via telephonic notice.[9] Ida appeared and opposed the

_____

[7] The Bank contends it first received notice of the Sergey Bankruptcy Case on September 7, 2012.

[8] It appears that the Bank received notice of the Ida Bankruptcy Case thereafter on or about August 27, 2012.

[9] Two days after the Skyline Motion was filed, Sergey continue...

-8-

Skyline Motion, asserting that the Bank was aware of the active Ida Bankruptcy Case at the time of the Trustee's Sale such that it should be rescinded.

On October 18, 2012, the bankruptcy court entered an order ("Skyline Order") granting the Skyline Motion, annulling the automatic stay retroactively to the date the Ida Bankruptcy Case was filed, and extending the annulment of the stay to be binding and effective as against any other "currently pending bankruptcy cases" based on the bankruptcy court's finding that the filing of the Ida Bankruptcy Case was "part of a scheme to delay, hinder, or defraud creditors that involved . . . transfer of all or part ownership of, or other interest in, the Property without the consent of the secured creditor or court approval."  The Skyline Order was served on Sergey at the Property address.  Neither Ida nor Sergey appealed the Skyline Order.

Sergey On the Offensive

In January 2013, Sergey filed a state court complaint against the Bank alleging that the Trustee's Sale should be deemed void, because it was conducted in violation of the

---

[9]...continue
amended the petition in his bankruptcy case to add Sergey Korchinsky as an "aka" for the debtor Sergey Sahakyan (Sergey Bankruptcy Case docket no. 17); he also filed an amended statement of his social security number (Sergey Bankruptcy Case docket no. 16).  These amendments made it clear that until September 28, 2012, there was nothing in the Sergey Bankruptcy Case that would have put either the Bank or Skyline on notice that Sergey had a pending bankruptcy case.

automatic stay in the Sergey Bankruptcy Case.[10] Sergey asserted that the Grant Deed by which an interest in the Property was transferred to Ida was a forgery, with the consequence that the Skyline Order could not apply to provide annulment of the automatic stay in the Sergey Bankruptcy Case.

Sergey thereafter filed a motion ("Sergey Motion") in the bankruptcy court on March 29, 2013, to reopen the Ida Bankruptcy Case for the purpose of vacating the Skyline Order based on the same assertions. The Bank and Skyline both opposed the Sergey Motion. On June 19, 2013, the bankruptcy court entered its order ("Sergey Order") denying all relief requested in the Sergey Motion, based on the available avenue for relief in the pending state court litigation. In ruling on the Sergey Motion, but not dispositive to its ruling, the bankruptcy court expressly rejected Sergey's contentions that he had not been served either

---

[10] The Bank alleges that this was Sergey's second attempt to get relief in the state court. On October 29, 2012, Sergey filed a state court complaint (Case No. PC053965), seeking, inter alia, a determination that the Trustee's Sale was void because it was conducted in violation of the automatic stay in the Sergey Bankruptcy Case. Case No. PC053965 apparently was dismissed after Sergey failed to pay the filing fee.

In a Supplemental Declaration filed July 23, 2013, in response to the Bank RFS Motion, Sergey contends that although he is the named plaintiff in Case No. PC053965, he did not file that case. He asserts that he did not know about the existence of Skyline on the date it was filed, October 29, 2012, nor did he know of any transfer of the Property. He contends he learned of the Trustee's Sale on or about December 5, 2012, when one of his tenants informed him of an approaching lockout.

Sergey further asserts that when he received the file in Skyline's pending unlawful detainer action on January 22, 2013, he learned that someone had filed an answer in his name.

with the Skyline Motion or the Skyline Order.[11]  Sergey timely appealed the Sergey Order on June 28, 2013, and it is pending before the Panel as BAP No. CC-13-1303.

Thereafter, on July 12, 2013, the Bank filed two motions each in the Sergey Bankruptcy Case, the Ida Bankruptcy Case, and the Ruzanna Bankruptcy Case.  The first motion sought to reopen the cases; these motions were granted on July 22, 2013.  The second motion ("Bank RFS Motions") sought annulment of the automatic stay based on bad faith, annulment of automatic stay pursuant to § 362(d)(4), and a "comfort order" to the effect that the Trustee's Sale was not void as a result of the annulment of the automatic stay.  The Bank asserted that the relief was necessary because Sergey continued to assert in state court proceedings that the Trustee's Sale was void.  Sergey opposed the Bank RFS Motions.

The bankruptcy court entered an order ("Bank RFS Order") in each of the three cases granting the Bank RFS Motions.[12]  At the

---

[11]  "[Sergey] argues that he had no knowledge of the [Skyline Motion or the Skyline Order] until January 22, 2013, when [Sergey] received the Unlawful Detainer Complaint. . . . The Court finds this argument to be unpersuasive.  On September 26, 2012, [Sergey] was served with the [Skyline Motion], wherein Skyline made clear it was requesting both a finding under § 362(d)(4) and extraordinary relief.  The [Skyline] Order was entered on November 21, 2012.  [Sergey] was again served with the [Skyline Order], which clearly showed what relief the Court had granted to Skyline.  Again, there was no objection to the form of order by [Sergey] under [LBR] 9021-1(3)(B)."  See Sergey Order at 2:23-28.

[12]  The Bank RFS Order in the Sergey Bankruptcy Case was entered on August 16, 2013, by Judge Alan M. Ahart, the case

continue...

August 7, 2013 hearing on the Bank RFS Motions in the Ida Bankruptcy Case and the Ruzanna Bankruptcy Case, the bankruptcy court stated its intent to docket its Tentative Ruling as its findings of fact and conclusions of law in connection with its decision to grant the Bank RFS Motions. The Tentative Ruling was docketed October 15, 2013.

In the Tentative Ruling, the bankruptcy court affirmatively found that the elements required to grant relief under § 362(d)(4) were present, i.e., that the bankruptcy cases of Sergey, Ida, and Ruzanna were part of a scheme to hinder, delay or defraud creditors that included transfers of the Property and multiple bankruptcy filings. The bankruptcy court also considered issues relating to good faith and prejudice to the parties and ruled that annulment of the stay was warranted.

Sergey timely appealed each of the Bank RFS Orders.[13]

---

[12]...continue judge for the Sergey Bankruptcy Case. The Bank RFS Orders in the Ida Bankruptcy Case and the Ruzanna Bankruptcy Case were entered on August 23, 2013, by Judge Maureen Tighe, the case judge for the Ida Bankruptcy Case and the Ruzanna Bankruptcy Case.

[13] Each Bank RFS Order contained the following "additional" relief beyond relief pursuant to § 362(d)(4) and annulment:

> Separate and independent from the relief provided
> above, the Court hereby confirms that (i) pursuant to
> 11 U.S.C. §§ 105(a) and 362(j), the [Skyline Order]
> annulled the stay in this debtor's bankruptcy case
> retroactive to the date of the bankruptcy petition and
> (ii) that pursuant to the [Skyline Order], the stay in
> this debtor's bankruptcy case does not affect
> postpetition acts by the Movants with respect to the
> Property, except to the extent that an appellate court
> continue...

## II.  JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(G).  We have jurisdiction under 28 U.S.C. § 158.

## III.  ISSUES

Whether the bankruptcy court abused its discretion when it refused to reopen the Ida Bankruptcy Case on the Sergey Motion.

Whether the bankruptcy court abused its discretion when it exercised jurisdiction over the Bank RFS Motions while the appeal of the Sergey Order was pending.

Whether the bankruptcy court erred in determining that the Bank had standing to prosecute the Bank RFS Motions eighteen months after the Trustee Sale had been conducted and the Trustee's Deed had been recorded to vest title in Skyline.

Whether the bankruptcy court erred when it found that the Property was transferred to Ida and Ruzanna with intent to hinder, delay or defraud a creditor.

Whether the bankruptcy court abused its discretion when it annulled the automatic stay as to the Property in the Bank RFS Orders.

## IV.  STANDARDS OF REVIEW

We review a bankruptcy court's denial of a motion to reopen a bankruptcy case for abuse of discretion.  See Weiner v. Perry, Settles & Lawson, Inc. (In re Weiner), 161 F.3d 1216, 1217 (9th

---

[13]...continue
orders otherwise.  The relief provided in paragraphs 3, 4, 9, 10a and 10b herein is separate and independent from the relief provided in the [Skyline Order].

-13-

Cir. 1998); Lopez v. Specialty Rests., Inc. (In re Lopez), 283 B.R. 22, 26 (9th Cir. BAP 2002).

We review the bankruptcy court's application of procedural rules and whether a particular procedure comports with due process de novo. All Points Cap. Corp. v. Meyer (In re Meyer), 373 B.R. 84, 87 (9th Cir. BAP 2007); Beneficial Cal. Inc. v. Villar (In re Villar), 317 B.R. 88, 92 (9th Cir. BAP 2004); see also Berry v. U.S. Trustee (In re Sustaita), 438 B.R. 198, 207 (9th Cir. BAP 2010) (whether adequate due process notice was given in any particular instance is a mixed question of law and fact reviewed de novo) (citing Demos v. Brown (In re Graves), 279 B.R. 266, 270 (9th Cir. BAP 2002)).

The rule that a notice of appeal will divest a court of jurisdiction "is not absolute." Neary v. Padilla (In re Padilla), 222 F.3d 1184, 1190 (9th Cir. 2000). We review de novo whether the bankruptcy court had jurisdiction over an issue following the filing of a notice of appeal. See Rains v. Flinn (In re Rains), 428 F.3d 893 (9th Cir. 2005).

"Standing is a legal issue that we review de novo." Kronemyer v. Am. Contractors Indemn. Co. (In re Kronemyer), 405 B.R. 915, 919 (9th Cir. BAP 2009).

The decision of a bankruptcy court to grant relief from the automatic stay under § 362(d) is reviewed for abuse of discretion. Kronemyer, 405 B.R. at 919. This includes a decision to grant in rem relief (First Yorkshire Holdings, Inc. v. Pacifica L 22, LLC (In re First Yorkshire Holdings, Inc.), 470 B.R. 864, 870-71 (9th Cir. BAP 2012)), and a decision to annul the automatic stay (Gasprom, Inc. v. Fateh (In re Gasprom,

-14-

Inc.), 500 B.R. 598, 607-08 (9th Cir. BAP 2013)).

We review the bankruptcy court's findings of fact for clear error. In re Brooks-Hamilton, 400 B.R. 238, 245 (9th Cir. BAP 2009). Clear error exists when, on the entire evidence, the reviewing court is left with the definite and firm conviction that a mistake was made. Oney v. Weinberg (In re Weinberg), 410 B.R. 19, 28 (9th Cir. 2009); Hoopai v. Countrywide Home Loans, Inc. (In re Hoopai), 369 B.R. 506, 509 (9th Cir. BAP 2007).

De novo review requires that we consider a matter anew, as if no decision had been made previously. United States v. Silverman, 861 F.2d 571, 576 (9th Cir.1988); B-Real, LLC v. Chaussee (In re Chaussee), 399 B.R. 225, 229 (9th Cir. BAP 2008).

A bankruptcy court abuses its discretion if it applies an incorrect legal standard or misapplies the correct legal standard, or its factual findings are illogical, implausible or without support from evidence in the record. TrafficSchool.com v. Edriver Inc., 653 F.3d 820, 832 (9th Cir. 2011).

We may affirm the decision of the bankruptcy court on any basis supported by the record. Shanks v. Dressel, 540 F.3d 1082, 1086 (9th Cir. 2008).

## V.  DISCUSSION

A.  BAP No. 13-1303

In his Opening Brief on Appeal, Sergey asserts that the bankruptcy court's fundamental error that led to each of the four appeals currently before the Panel was the failure to find that the Grant Deed had been forged.

However, in entering the Sergey Order, which is the subject

-15-

of BAP No. 13-1303, the bankruptcy court explicitly made no findings with respect to the validity of the Grant Deed. "[W]hether [Sergey] is successful in prosecuting his Complaint to Void the Trustee Sale of the . . . Property is outside the scope of the [Skyline Order]." Because the validity of the Grant Deed could be litigated in the state court proceedings, the bankruptcy court determined that reopening the Ida case to vacate the Skyline Order was not necessary.[14]

Sergey's Opening Brief further asserts that the bankruptcy court incorrectly found that Sergey had been served with the Skyline Motion and the Skyline Order. Implicit in the bankruptcy court's findings is a determination that the notice provided to Sergey satisfied due process requirements. We agree. The record on appeal reflects that Sergey was served with the Skyline Motion

---

[14] Generally, "the reopening of a closed bankruptcy case is a ministerial act that functions primarily to enable the file to be managed by the clerk as an active matter and that, by itself, lacks independent legal significance and determines nothing with respect to the merits of the case." Menk v. Lapaglia (In re Menk), 241 B.R. 896, 913 (9th Cir. BAP 1999) (citations omitted). A motion to reopen implicates a narrow range of administrative issues, such as, for example, whether further estate administration is necessary, whether a trustee should be appointed, and whether another filing fee is required. Id. at 916–17. This Panel has previously ruled that it is not appropriate in proceedings on a motion to reopen to make substantive determinations on claims for relief. Id.

In this appeal, however, Sergey does not assert that the bankruptcy court erred in denying his motion to reopen on the ground that extraneous issues intruded in the court's decision to deny the motion. We therefore deem this issue to have been waived by Sergey. See, e.q., Arpin v. Santa Clara Valley Transp. Agency, 261 F.3d 912, 919 (9th Cir. 2001) (generally, issues not "specifically and distinctly argued" in a party's opening brief are deemed waived).

and the Skyline Order in the Ida Bankruptcy Case at the Property address. Even assuming that the short notice period between the service and the October 3, 2012 hearing might raise due process issues, Sergey took no prompt action to address allegedly improper notice once he had been served with the Skyline Order. The Sergey Motion was not filed until March 2013, well after the appeals period had run in the case, and only after Sergey had been served with an unlawful detainer action in state court. In addition, Sergey complains that Skyline filed no motion in his bankruptcy case. However, Sergey filed the Sergey Bankruptcy Case in a name unknown to the Bank and with an incorrect social security number. Skyline had no way of knowing about the Sergey Bankruptcy Case. The matrix information in the Sergey Bankruptcy Case did not afford the Bank an opportunity to discern the filing and its potential application to its creditor interests. This record suggests Sergey went to great lengths to keep the Bank from learning of the Sergey Bankruptcy Case. Had Sergey been forthcoming about his own bankruptcy case information, he likely would have received better, or at least additional or different, notice. Under the circumstances, we cannot say that the bankruptcy court erred when it determined that service on Sergey at the Property address did not deprive Sergey of his due process rights in connection with the Skyline Motion and Order.

On this record, the Sergey Motion appears to have been nothing more than an attempt to attack the Skyline Order collaterally. Thus, we are satisfied that the bankruptcy court did not abuse its discretion when it denied Sergey's motion to

reopen the Ida Bankruptcy Case. Having denied Sergey's motion to reopen, the bankruptcy court did not need to reach Sergey's motion to vacate the Skyline Order.

B.   BAP Nos. 13-1411, 13-1426 and 13-1427.

     1.   <u>The Pendency of BAP No. 13-1303 Did Not Divest the Bankruptcy Court of Jurisdiction Over the Bank RFS Motions.</u>

     Sergey asserts on appeal that the pendency of the appeal of the Sergey Order, BAP No. 13-1303, divested the bankruptcy court of jurisdiction over "related matters."

     However, a valid notice of appeal does not completely divest the trial court of jurisdiction in the underlying case; the trial court retains jurisdiction over any part of the case not affected by the notice of appeal. "When a proper notice of appeal has been timely filed, the general rule is that jurisdiction over any matters involved in the appeal is immediately transferred . . . [to the appellate court]." <u>See</u> <u>Matter of Thorp</u>, 655 F.2d 997, 998 (9th Cir. 1991). <u>See also</u> <u>Petrol Stops NW v. Cont'l Oil Co.</u>, 647 F.2d 1005, 1010 (9th Cir. 1991)(generally, the filing of a notice of appeal divests a trial court of jurisdiction only over matters involved in the appeal). Orders from contested matters that adjudicate discrete disputes do not divest the bankruptcy court of jurisdiction generally.

     Sergey argues that because the issues on appeal in BAP No. 13-1303 are exactly the same issues underlying the Bank RFS Motions, <u>i.e.</u>, whether the bankruptcy court should have granted in rem relief from the automatic stay as to the Property, the bankruptcy court erred when it exercised jurisdiction over the Bank RFS Motions and entered the Bank RFS Orders in the three

-18-

bankruptcy cases.

Sergey is mistaken. The primary issue on appeal in BAP No. 13-1303 is whether the Ida Bankruptcy Case should have been reopened for the purpose of vacating the Skyline Order. Although the Sergey Order includes a provision denying Sergey's requested relief from the Skyline Order as it applied to him, the bankruptcy court did not reach the underlying issue, ruling instead that the issue of the validity of the Grant Deed could be raised in state court proceedings. Further, even if Sergey could possibly be successful through BAP No. 13-1303 in obtaining relief from the Skyline Order, the Bank, as a separate holder of a secured interest in the Property at the time each of the bankruptcy cases was filed, had its own right to seek relief from the automatic stay, including retroactive relief and relief in rem. Stated differently, the Bank RFS Motions addressed the Bank's rights vis-à-vis the Property. The Sergey Order on appeal at most touched upon Skyline's rights vis-à-vis the Property from the date it was entered.

2. The Bank Had Standing to Prosecute the RFS Motions.

Sergey next asserts that the Bank had no standing to prosecute the Bank RFS Motions, filed in July 2013, where the Bank's Trustee Sale on August 17, 2012, and the recording of the Trustee's Deed in favor of Skyline divested the Bank of any interest in the Property. This argument is specious on its face. The purpose of the Bank RFS Motions was specifically to address the issue of whether the Bank could have conducted the Trustee Sale in August 2012 in the first instance. Resolution of this issue necessarily involved adjudication of the Bank's rights with

-19-

respect to its secured interest in the Property and the impact of a bankruptcy filing(s) on the exercise of the Bank's rights. Further, the Bank RFS Motions were filed in response to Sergey's assertions in the state court proceedings that the Trustee Sale violated the automatic stay in the Sergey Bankruptcy Case.

In the case of a party seeking relief from the automatic stay to foreclose an interest in real property, we have held that a moving party must establish it had some interest in the underlying note, either as a holder or as a person entitled to enforce the note. See Veal v. Am. Home Mortg. Serv., Inc. (In re Veal), 450 B.R. 897, 910-13 (9th Cir. BAP 2011). While the Bank ostensibly no longer held any interest in the Property when it filed the Bank RFS Motions in light of the Trustee's Deed recorded in favor of Skyline, two other factors are significant in this analysis. First, the Bank was seeking such relief specifically in response to Sergey's assertion in the state court that the Bank had no right to conduct the Trustee Sale in the absence of relief from the automatic stay in the Sergey Bankruptcy Case. The logical extension of Sergey's argument is that the Bank must still be the holder of the Note or the person entitled to enforce the Note. Second, the Bank was seeking an order with respect to the automatic stay that would establish its rights prior to the Trustee's Sale, a time at which it clearly had standing.

Relying on Kronemyer v. Am. Contractors Indem. Co. (In re Kronemyer), 405 B.R. 915, 919 (9th Cir. BAP 2009), and First Fed. Bank v. Robbins (In re Robbins), 310 B.R. 626, 631 (9th Cir. BAP 2004), the bankruptcy court ruled that the Bank was

a "party in interest" with a colorable claim sufficient to confer standing. We agree.

3. <u>The Bankruptcy Court's Finding That the Property Was Transferred With Intent to Hinder, Delay or Defraud a Creditor Was Not Clearly Erroneous.</u>

Section 362(d)(4) authorized the bankruptcy court to grant in rem relief as to the Property, provided that appropriate findings were made. Section 362(d)(4) provides:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay –
> . . .
> (4) with respect to a stay of an act against real property under subsection (a), by a creditor whose claim is secured by an interest in such real property, if the court finds that the filing of the petition was part of a scheme to delay, hinder, or defraud creditors that involved either --
> (A) transfer of all or part ownership of, or other interest in, such real property without the consent of the secured creditor or court approval; or
> (B) multiple bankruptcy filings affecting such real property.

In <u>In re First Yorkshire Holdings, Inc.</u>, 470 B.R. 864, 870 (9th Cir. BAP 2012), this Panel articulated the elements a bankruptcy court must find present in order to grant in rem relief as to property: a debtor's bankruptcy filing must have been part of a scheme; the purpose of the scheme must have been to delay, hinder, or defraud creditors; and the scheme must have involved either (a) the transfer of some interest in the real property without the secured creditor's consent or court approval, or (b) multiple bankruptcy filings. The bankruptcy court affirmatively found each element present in this case.

We observe again that in his Opening Brief on Appeal, Sergey asserts that the bankruptcy court's fundamental error that led to

each of the four appeals currently before the Panel was the failure to find that the Grant Deed had been forged. Sergey asserts that because the Grant Deed was fraudulent as to him, in rem relief was not available under the express terms of the statute. He contends that any transfer of an interest in the Property was void, such that the bankruptcy court's § 362(d)(4)(A) finding was clearly erroneous. Further, because the Grant Deed was ineffective to transfer an interest in the Property to Ida and Ruzanna, the Property only was affected by the filing of the Sergey Bankruptcy Case.

The bankruptcy court considered and rejected Sergey's evidence that the Grant Deed was forged and that Sergey had no knowledge of its execution or recording. We must accept the bankruptcy court's findings of fact unless we have a definite and firm conviction that a mistake has been committed. Oney v. Weinberg (In re Weinberg), 410 B.R. at 28; Hoopai v. Countrywide Home Loans, Inc. (In re Hoopai), 369 B.R. at 509. We have no such conviction with respect to these appeals. The record on appeal adequately supports the bankruptcy court's findings. In particular, the pattern of the Sergey, Ida, and Ruzanna bankruptcy filings, Sergey's filing of the Sergey Bankruptcy Case in a manner patently designed to preclude the Bank from learning of the filing in order to protect its rights, Ida's opposition to the Skyline Motion suggesting she claimed an interest in the Property, and the Amended Involuntary Petition filed in the Bankruptcy Court for the District of Nevada which establishes that creditors of Sergey believed he also used the names of Ida and Ruzanna, all support the bankruptcy court's findings that

-22-

Sergey engaged in a course of conduct designed solely to protect the Property from foreclosure.

Because the record supports the bankruptcy court's findings that the elements of § 362(d)(4) were established, the bankruptcy court did not abuse its discretion when it granted the Bank in rem relief in the Sergey, Ida, and Ruzanna bankruptcy cases.

4. The Bankruptcy Court Did Not Abuse Its Discretion When It Granted Retroactive Relief to the Bank.

Section 362(d) expressly authorizes a bankruptcy court to terminate, annul, modify, or condition the automatic stay in a bankruptcy case. Here, the bankruptcy court annulled the stay.

> The use of the word "annulling" means that such relief from the stay may operate retroactively. This would validate actions taken by a party at a time when the party was unaware of the stay.

3 COLLIER ON BANKRUPTCY ¶ 362.07[1] (Alan N. Resnick and Henry J. Sommer eds., 16th ed. 2013).

In Fjeldsted v. Lien (In re Fjeldsted), 293 B.R. 12, 25 (9th Cir BAP 2003), this Panel identified factors that a bankruptcy court should consider when deciding whether to annul the automatic stay:

> (1) number of filings; (2) whether, in a repeat filing case, the circumstances indicate an intention to delay and hinder creditors; (3) a weighing of the extent of prejudice to creditors or third parties if the stay relief is not made retroactive, including whether harm exists to a bona fide purchaser; (4) the debtor's overall good faith (totality of the circumstances); (5) whether the creditor knew of the stay but nonetheless took action, thus compounding the problem; (6) whether the debtor has complied and is otherwise complying with the Bankruptcy Code and rules; (7) the relative ease of restoring the parties to the status quo ante; (8) the costs of annulment to the debtor and to the creditor; (9) how quickly the creditor moved for annulment, or how quickly the debtor moved to set aside

the sale or violative conduct; (10) whether, after learning of the bankruptcy, the creditor proceeded to take steps in continued violation of the stay, or whether the creditor moved expeditiously to gain relief; (11) whether annulment of the stay will cause irreparable injury to the debtor; and (12) whether stay relief will promote judicial economy or other efficiencies.

The bankruptcy court determined, based upon the indicia of a scheme to hinder, delay or defraud present in each bankruptcy case, that annulment of the stay was appropriate. The bankruptcy court further found that neither Sergey, Ida nor Ruzanna "made anything more than a sham attempt to actually pursue reorganization and discharge in good faith." In deciding the issue, the bankruptcy court noted the prejudice that otherwise would result to the Bank and Skyline, particularly where Sergey was actively seeking relief in the state court proceedings to set aside the Trustee's Sale as void.

In light of the bankruptcy court's findings, supported by evidence, that Sergey engaged in a scheme to delay, hinder or defraud the Bank, and that the Bank and Skyline were being prejudiced by Sergey's actions going forward, we find no abuse of discretion in the bankruptcy court's annulment of the automatic stay as to the Property as a means of correcting, or more accurately, validating, the legal record regarding the transfer of ownership of the Property to Skyline as a consequence of the Trustee's Sale.

## VI.  CONCLUSION

BAP No. 13-1303.  The bankruptcy court did not abuse its discretion when it declined to reopen the Ida Bankruptcy Case.

BAP Nos. 13-1411, 13-1426, 13-1427.  The filing of BAP No.

-24-

13-1303 did not divest the bankruptcy court of jurisdiction to consider the Bank RFS Motions. The Bank did not lose standing to prosecute the Bank RFS Motions post-foreclosure where Sergey asserted that the foreclosure itself was void. On the record before it, the bankruptcy court did not abuse its discretion when it granted the Bank RFS Motions, including when it annulled the automatic stay as to the Property and when it granted in rem relief.

We affirm the orders of the bankruptcy court in each of the pending appeals.